Edward HERWALD, etc.,
Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary,
Health and Human Services, et al.,
Defendants-Appellees.

No. 80–1505.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 7, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

James B. Lamb, John C. Cowley, Waco-McLennan County Legal Aid, Waco, Tex., for plaintiff-appellant.

Frank C. Cooksey, Austin, Tex., for NLCI & RNDC, JE & MT.

Ann Clarke Snell, David H. Young, Asst. Attys. Gen., Austin, Tex., for JC.

Before MARKEY **, Chief Judge, and GEE and POLITZ, Circuit Judges.

GEE, Circuit Judge:

Edward Herwald, on behalf of his 51-year-old severely retarded son, Ernest, appeals from the denial of a preliminary injunction to prevent Ernest's release from the Robinson Nursing and Convalescent Center in Waco, Texas, pending resolution of plaintiffs' underlying claims. Plaintiffs requested the injunction as a step in their suit filed against the Secretary of the then Department of Health, Education and Welfare (now Health and Human Services), the Commissioner of the Texas Department of Human Resources, the Robinson Center, its corporate entity (National Living Centers, Inc.), individual employees of Robinson, and an employee of the Heart of Texas Mental Health/Mental Retardation Center (an employee of the State of Texas). The spur to this lawsuit was a decision by the Robinson Center, a private, intermediate-care facility licensed by the State of Texas to accept such Medicaid patients as Ernest, that for Ernest's sake and for the welfare of other Robinson residents he should be placed in a

** Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

more restrictive facility. Mr. and Mrs. Herwald, both in their seventies, wanted their son to remain in Robinson; that center is closer to their residence and in their opinion was a better place for Ernest's care than an institution like the Mexia State School, where Ernest had been placed prior to his residence at Robinson. Informed of plans for Ernest's release and of the need for their arranging other accommodations, the Herwalds communicated their disagreement with that decision to the Robinson authorities. Since no satisfactory informal resolution was accomplished, the Herwalds went to court.

Plaintiffs advanced a number of claims against the various defendants; the substance of the complaint is set out in the margin.[1] The Herwalds object to the involuntary discharge of Ernest from the Robinson home without what they characterize as a proper due process hearing. Essentially, they sue to keep Ernest in the Robinson facility.

■ Plaintiffs requested and obtained a temporary restraining order briefly delaying Ernest's release from the Robinson home. They then sought a preliminary injunction against Robinson and its employees, "preventing pendente lite:

(1) any attempt to discharge plaintiff Ernest Herwald;

(2) any harassment, abuse or mistreatment of plaintiff or his family;

(3) any failure to appropriately care for plaintiff consistent with reasonable community standards.

Concluding that the actions of the Robinson defendants did not constitute state action and that they had acted entirely as private parties and not under color of state law, the district court denied the requested injunction. It did so on the basis that these findings demonstrated an absence of subject-matter jurisdiction under section 1343(3) to support injunctive action against the Robinson facility and its employees. From this piece of the puzzle—the denial of preliminary injunctive relief on the basis of a perceived want of subject-matter jurisdic-

1. "This suit involves the right of a mentally retarded occupant of an ICF–MR facility under the Medicaid statute, 42 U.S.C. § 1396 et seq. to a due process hearing before being involuntarily discharged from such a setting. Jurisdiction of the causes against [the] Secretary of the Department of Health [and Human Services], hereinafter called the Secretary, are based in 28 U.S.C. § 1331, 28 U.S.C. § 1361 (the Mandamus statute) and 28 U.S.C. §§ 2201–02. The causes arise under 42 U.S.C. § 1396 et seq. (Title XIX–Medicaid Statute), the Fifth and Fourteenth Amendments to the United States Constitution and regulations found at 42 CFR § 442.404(c), 42 CFR § 442.424, 42 CFR § 442.-425, and 45 CFR § 205.10. Jurisdiction of the causes against Jerome Chapman, individually, as Commissioner of the Texas Department of Human Resources and as representative thereof, hereinafter called the Commissioner, are based upon 28 U.S.C. § 1331 and involving a claim or controversy valued in excess of $10,-000.00 and 28 U.S.C. § 1343(3), (4) and arise under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1396 et seq., 45 CFR § 205.10, 42 CFR § 442.425 and 45 CFR § 442.404(c) and Article VI, Clause 2 of the United States Constitution known as the Supremacy Clause. Basically, plaintiff is asking the Court with respect to the Texas Department of Human Resources to review the present state plan and require creation and implementation of fair hearing procedures. For violation of the Fifth and Fourteenth Amendments to the United States Constitution wherein they provide for fundamental due process of law by failing to institute necessary hearing procedures, Jerome Chapman, in depriving Ernest Herwald of rights under the Constitution while acting under color of state law has violated 42 U.S.C. § 1983. Against National Living Centers, Inc. and the Robinson Nursing and Development Center, a cause of action is stated under pendent jurisdiction of all state claims for violation of Article 5547–300 V.A.T.S. known as the Mentally Retarded Persons Act and by plaintiff against these defendants for breach of contract as a third party beneficiary. As against Jerry Echols, Mary Tatum and Jim Lane in addition to National Living Centers, Inc. and the Robinson Nursing and Development Center jurisdiction is based in 28 U.S.C. § 1343(3), (4) with a cause of action based upon the Fifth and Fourteenth Amendments to the United States Constitution and the deprivation of defendants of fundamental due process of law to plaintiff while they acted under color of state law in violation of 42 U.S.C. § 1983. The primary focus of relief in all of the above causes is upon equitable relief although nominal damages are pled and reasonable attorney's fees are sought."

tion—arises this appeal.[2] We affirm the result reached by the district court, but not the entirety of its reasoning.

There is no separate and particular jurisdictional test for the grant of a preliminary injunction. If the case is properly in federal court, and the target of the injunction is a proper defendant the court has jurisdiction to order the requested relief. In denying the injunctive relief for lack of subject-matter jurisdiction over the section 1983 claim, the district court improperly narrowed its sights.

 The district court concluded that under neither of two tests—the "nexus"[3] and "public function"[4] standards—used by courts in evaluating nominally private actions in the context of section 1983 claims could the decision to remove Ernest from the Robinson center be considered "state action."[5] Had the case been against the Robinson defendants under section 1983 alone, the conclusion that the defendants' actions were not "under color of state law" could properly have led to a dismissal for want of subject-matter jurisdiction.[6] But there was more to the Herwalds' complaint, matter not considered by the district court in concluding that it lacked jurisdiction in the case; matter that, under the liberal principles of *Bell v. Hood*[7] and its progeny,

2. That Ernest has been discharged from Robinson and is now living at home with his parents does not render moot this appeal from the denial of an injunction preventing that discharge. While the injunction request was literally to prevent "any attempt to discharge" Ernest, it would certainly encompass a court-ordered return to Robinson. The substance of the requested relief was Ernest's continued residence in the Robinson facility.

3. It may well be that acts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found to be "state" acts than will the acts of an entity lacking these characteristics. But the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.
*Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 350–51, 95 S.Ct. 443, 449, 42 L.Ed.2d 477 (1974).

4. Petitioner next urges that state action is present because respondent provides an essential public service required to be supplied on a reasonably continuous basis ... and hence performs a "public function." We have, of course, found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State.
*Id.* at 352, 95 S.Ct. at 454.

5. Two elements must be proved in order to recover under section 1983: (1) deprivation of a constitutional right by a defendant, (2) acting under color of [state] law.... Generally speaking the labels "state action" and "under color of law" are perceived as alternative ways of expressing the same legal principle.
*Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873, 877 n.7 (5th Cir. 1975).

6. Procedural purists might argue that a court's analysis of private action under the nexus or public functions test requires assumption of jurisdiction; the subsequent determination that such private action was not under color of state law would lead to dismissal for failure to state a claim. "Unlike the result in some situations, a failure to state a cause of action under 42 U.S.C. §§ 1981, 1983, or 1985 'has the effect of depriving federal courts of subject matter jurisdiction under [28 U.S.C. § 1343(3)].' *Campbell v. Gadsden County Dist. Sch. Bd.*, 534 F.2d 650, 653 n.3 (5th Cir. 1976)." *Carter v. Telectron, Inc.*, 554 F.2d 1369, 1370 (5th Cir. 1977).

7. Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.... The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.
*Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

may support federal court jurisdiction. If another of the complaint's claims is properly laid in federal court, the district court had jurisdiction of this lawsuit; therefore, under principles of pendent jurisdiction, it is possible that Robinson is a proper defendant. Assuming all of the above in plaintiffs' favor, denial of the injunction for want of subject-matter jurisdiction was premature.

 A decision of the district court denying a preliminary injunction should be affirmed on appeal absent an abuse of discretion. *Collum v. Edwards*, 578 F.2d 110, 113 (5th Cir. 1978). In the exercise of its discretion the court is to consider four factors in weighing a request for this extraordinary relief: (1) the substantial likelihood of plaintiff's success on the merits; (2) the irreparable injury likely to occur to plaintiff if the injunction is denied; (3) the public interest to be served by the grant of the injunction; and (4) the harm possibly resulting to other parties. *Allison v. Froehlke*, 470 F.2d 1123, 1126 (5th Cir. 1972). The magistrate's recommended order to the district court (adopted by that court as the proper disposition of this injunction request) concluded with a hypothetical consideration of the merits of the injunctive request and found the granting of such relief unwarranted on that basis as well. The report stated:

> If the court had reached the merits of granting a preliminary injunction herein, such an injunction would have been denied on the facts presented. The irreparable harm to the staff and other residents of the Robinson facility from Ernest Herwald's continued residence in the facility outweighs the minimal positive aspects of his continued presence there. In fact, the testimony seems to substantiate that it is in Ernest Herwald's best interest to reside in a facility with a more restricted environment. Absent an adequate jurisdictional basis for the Court's consideration of the merits, there is no likelihood that the Plaintiff will prevail on the merits.

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

The final sentence of that statement, taken alone, would perhaps counsel remand to the district court for consideration of the other possible bases of federal jurisdiction, and if one were then found to support jurisdiction, additional consideration on the merits of the request. But, taking the magistrate's conclusion as a whole and in context, remand would be pointless; the court below has stated a sufficient substantive reason for denying the preliminary injunction. No one's interest would be served by extending this already drawn-out process. We affirm the denial of the preliminary injunction and leave the matter as it now stands for trial on the merits.

AFFIRMED.