Rosie TAYLOR, by next friend, John Henry Taylor, individually and on behalf of others similarly situated, Plaintiffs-Appellants,

v.

Fred ST. CLAIR, individually and as Commissioner of the Mississippi State Department of Public Welfare, et al., Defendants-Appellees.

No. 80–3693.

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1982.

Rehearing and Rehearing En Banc Denied Nov. 2, 1982.

Suzanne Griggins, Central Mississippi Legal Services, Mendenhall, Miss., for plaintiffs-appellants.

Jim R. Bruce, Sp. Asst. Atty. Gen., William R. Phillips, Gen. Counsel, Mississippi Medicaid Commission, Jackson, Miss., for defendants-appellees.

Before GEE and RUBIN, Circuit Judges, and SPEARS *, District Judge.

SPEARS, District Judge:

This suit, seeking declaratory and injunctive relief and attorney's fees, was brought as a class action by Rosie Taylor[1] on her

---

\* District Judge of the Western District of Texas, sitting by designation.

1. Due to Rosie Taylor's incapacity, suit was filed in her name by her husband, John Henry Taylor, as next friend. Although it appears that Mrs. Taylor, the representative of the class certified by the district judge, died on May 15, 1979, and that the case is moot as to her, we are satisfied that the interests of the class have been competently urged at each level of the proceeding thus far, and that the test of Rule

behalf and on behalf of "... all Medicaid patients who have been or are being or will in the future be terminated from nursing home service without the benefit of prior written notice and an evidentiary hearing to determine whether just cause exists under the Patient's Bill of Rights (20 C.F.R. 405.1121) for such termination."[2] The trial court found that the appellants had failed to state a claim upon which relief could be granted, entered summary judgment for the appellees, and dismissed the suit.

Appellants are unnamed members of the class certified by the trial court. Rosie Taylor, the named representative of the class, was a 59 year old woman who required skilled nursing care. She was a Medicaid recipient and a patient at the Mendenhall Nursing Home (Mendenhall). As a skilled nursing facility licensed by the State of Mississippi, and certified by the State to receive Medicaid reimbursement, Mendenhall received such reimbursement for the care given to Mrs. Taylor during the time she was in residence there.

Appellees are state defendants who were sued individually and in their official capacities as members, respectively, of the Mississippi Medicaid Commission, the Mississippi Department of Public Welfare, or the Mississippi State Board of Health.

In March of 1978, Mrs. Taylor was transferred from the nursing home because of a medical emergency. She required hospitalization for only a few days, and was ready to return to Mendenhall when she was informed that she had been permanently discharged from the nursing home subsequent to her transfer to the hospital. She was not given any notice that she would be permanently discharged upon her transfer to the hospital, nor was she given an opportunity for a pretermination hearing. She remained in the hospital until July of 1978, at which time she was transferred to another nursing home where space had become available.

Suit was filed as a class action against various nursing home and state defendants based on the denial of due process under the Fourteenth Amendment; violation of the Fair Hearing Provisions contained in 45 C.F.R. 205.10 and the Civil Rights Act of 1871, 42 U.S.C. § 1983; and violation of the Supremacy Clause of the United States Constitution and the Fourteenth Amendment, by virtue of defendants' failure to comply with the mandates of the Medicaid Program as provided in 20 C.F.R. 405.1121.[3]

On June 23, 1978, Mrs. Taylor moved for certification of her class. On July 5, 1978, Mrs. Taylor, the nursing home defendants, and some, but not all, of the present defendants (appellees)[4] entered into a consent decree.[5]

23(a), Federal Rules of Civil Procedure, has been met. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir. 1981).

**2.** 20 C.F.R. 405.1121 was contained in the 1977 edition of the Code of Federal Regulations, but it can now be found in 42 C.F.R. 405.1121.

**3.** *Id.*

**4.** State defendants sued as members of the Mississippi State Board of Health were not joined as defendants until September 1, 1978.

**5.** The consent decree provided, in pertinent part, as follows:
"IT IS ORDERED AND ADJUDGED that the plaintiff, Rosie Taylor, be afforded a full evidentiary hearing by the Medicaid Commission in accordance with 45 C.F.R. 205.10 and 20 C.F.R. 405.1120, to determine whether just cause existed for her termination from the Mendenhall Nursing Home. The hearing will be held on Friday, July 7, at 2:00 p. m.
"IT IS FURTHER ORDERED AND ADJUDGED that the motion for Preliminary Injunction/Motion for Class Certification is hereby continued until August 1, pending the State's drafting of regulations concerning involuntary transfers from nursing homes in accordance with the federal Fair Hearing Regulations (45 C.F.R. 205.10) and The Patient's Bill of Rights (20 C.F.R. 405.1120) and submission of them to the United States Department of Health, Education and Welfare for their approval.
"IT IS FURTHER ORDERED AND ADJUDGED that if, in the interim period between the entering of this order and the State's drafting of the regulations regarding involuntary transfers from nursing homes

On December 7, 1978, the private nursing home defendants were dismissed, and the suit continued against the appellees. On September 15, 1980, Mrs. Taylor's class was certified *nunc pro tunc* as of December 14, 1978. The appellees moved for dismissal and summary judgment, contending that appellants had failed to state a claim upon which relief could be granted, and that the trial court lacked subject matter jurisdiction.

On July 22, 1980, the trial court filed its Memorandum Opinion finding appellees' motions meritorious, and entered an order dismissing the suit. We affirm.

## STATUTORY SCHEME

The State of Mississippi participates in Medicaid, a joint federal-state program providing medical assistance to qualified recipients. Title 42 U.S.C. § 1396. Participating states receive a *proportional reimbursement* from the federal government for expenses incurred in providing medical services for eligible medicaid patients. *Id.* In order to participate in the Medicaid program, a state must submit a plan to the Secretary of Health, Education and Welfare (HEW)[6] for approval, and the plan must comply with all requirements of 42 U.S.C. § 1396a. The state must also provide for a system under which the single state agency responsible for the program shall be responsible for fulfillment of hearing provisions. 45 C.F.R. 205.10. Once a state plan is approved, the state agency responsible for the program is authorized to contract with public and private institutions for the rendering of medical services to eligible recipients.

In Mississippi, the state agency responsible for the program is the Mississippi Medicaid Commission (the Commission). However, the Commission utilized the Mississippi State Board of Health which licensed

nursing homes and certified them as eligible Medicaid providers.[7] The Commission also utilizes the State Department of Public Welfare which determines the eligibility of Medicaid recipients, and forwards applications to the Medicaid Commission for continued reimbursement of services.

A skilled nursing facility, as a provider under a contract with the Commission, must comply with the requirements set forth in 42 U.S.C. § 1395x(j), 42 U.S.C. § 1396a(a)(28), and 20 C.F.R. § 405.1101–1137.[8] Among these regulations is the provision that each patient

> is transferred or discharged only for medical reasons, or for his welfare or that of other patients, or for nonpayment of his stay . . ., and is given reasonable advance notice to ensure orderly transfer or discharge, and such actions are documented in his medical record;

20 C.F.R. § 405.1121(k)(4).

Before the Commission enters into a provider agreement with a nursing home, the home must be certified by the State Board of Health as complying with the requirements set out in the federal regulations and embodied in the state plan. A qualified provider must abide by these regulations as a condition of participation in the Medicaid Program. A provider who does not comply with the regulations, and who does not submit an acceptable plan for correction and compliance, may be decertified. Certified nursing homes are surveyed each year by the State Board of Health in order to insure continued compliance with the regulations.

Mendenhall, as a certified skilled nursing facility, was required to comply with the regulations, and the discharge of Rosie Taylor was in contravention of them.

---

and their submission to HEW, any nursing home proposes to involuntarily transfer any patient, that patient will be afforded notice and a fair hearing in accordance with 45 C.F.R. 205.10 and 20 C.F.R. 405.1120."

**6.** Now the Department of Health and Human Services.

**7.** *The Mississippi State Board of Health is no longer responsible for licensing and certification of nursing homes. Those responsibilities now rest with the Mississippi Health Care Commission. Section 41–7–171 Miss.Code.*

**8.** 20 C.F.R. § 405.1101–1137 can now be found at 42 C.F.R. § 405.1101–1137.

## CONSENT DECREE

Initially, appellants argue that the trial court was in error in not enforcing the consent decree. Appellees respond that the trial court lacked subject matter jurisdiction [9] and, therefore, that the consent decree was null and void. Alternatively, appellees contend that they satisfied the requirements of the consent decree, and that no further action can be required of them.

■ A careful reading of the trial court's Memorandum Opinion clearly shows that the court found the existence of subject matter jurisdiction, but the suit was dismissed because the appellants had failed to state a claim upon which relief could be granted.[10] Indeed, the trial court's opinion is consistent with the well settled principle that the dismissal of a claim for want of subject matter jurisdiction is only appropriate where the claim is insubstantial and frivolous, or is immaterial, or the claim is made solely to contrive jurisdiction. *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 68–72, 98 S.Ct. 2620, 2628–29, 57 L.Ed.2d 595 (1978); *Hagans v. Lavine*, 415 U.S. 528, 537–43, 94 S.Ct. 1372, 1379–82, 39 L.Ed.2d 577 (1974); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974); *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Wohlfahrt v. Memorial Medical Center*, 658 F.2d 416, 417 (5th Cir. 1981); *Herwald v. Schweiker*, 658 F.2d 359, 362 (5th Cir. 1981); *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981); *Curtis v. Taylor*, 625 F.2d 645, 650 (5th Cir. 1980). Since we conclude that the trial court had jurisdiction, we now focus on whether the appellees complied with the requirements of the consent decree.

■ Appellants interpret the consent decree as a contract requiring the appellees to draft regulations, submit them to HEW, and to implement the regulations into the Mississippi Medicaid Program. Appellees correctly counter that the plain language of the decree required them only to draft regulations and submit them to HEW, and to afford Mrs. Taylor an administrative hearing to determine if her residence at the nursing home was terminated for just cause. The consent decree also covered the granting of a notice and hearing to any patient who was to be involuntarily transferred during the period between the entering of the consent decree and the submission of the proposed regulations to HEW. A full evidentiary hearing was accorded Mrs. Taylor, no patient was denied a hearing during the interim period, and the appellees did submit three sets of regulations to HEW for that agency's approval,[11] so the requirements of the consent decree were satisfied by the steps appellees had taken to comply, and apparently the trial court was of the same opinion.[12]

It has been suggested that appellees' compliance with the requirements of the consent decree was sufficient, in and of

---

**9.** Appellees base this contention on the portion of the trial court's order entered on August 14, 1980, which states:

"This cause having come to be heard on defendants' motion for summary judgment and motion to dismiss for lack of jurisdiction, ... the Court, ... finds that both of defendants' motions are meritorious and should be granted. It is, therefore,

"ORDERED AND ADJUDGED that defendants' Motion for Summary Judgment and Motion to Dismiss are hereby granted and that this action should be and is hereby dismissed. ..."

**10.** The Memorandum Opinion states:

"Although subject matter jurisdiction exists over the 1983 claim under 28 U.S.C. 1343, this is not determinative of whether or not the plaintiff and class have stated a cause of action under 1983."

**11.** The appellees submitted the proposed regulations to HEW after the trial court ordered enforcement of the consent decree on February 12, 1979. HEW informed appellees that the federal regulations require a hearing only when the state Medicaid agency was taking some action. See Record p. 354.

**12.** Although appellants subsequently, on March 2, 1979, again asked for enforcement of the consent decree, the trial court did not require any further action than that which appellees had already taken, and gave the consent decree only cursory treatment in the Memorandum Opinion.

itself, to justify an affirmance of the trial court's judgment, but whether or not that is true, the fact remains that a proper resolution of the two basic causes of action asserted by appellants also fully supports the action of the district court. They will be discussed below under the headings "State Action" and "Cause Of Action Under The Social Security Act," and in these discussions it will be assumed that Medicaid patients comprising the class were being discharged or transferred by Mendenhall without notice or an opportunity to be heard.

### STATE ACTION

The summary judgment granted and the dismissal entered by the trial judge were based on his finding that the actions of Mendenhall in discharging Mrs. Taylor were those of a private entity and, therefore, they could not constitute "state action."

■ It is axiomatic that in order to be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured to him under the Constitution or federal law, and that the deprivation occurred under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155–156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Herwald v. Schweiker*, 658 F.2d 359, 362, n.5 (5th Cir. 1981); *Sims v. Jefferson Downs, Inc.*, 611 F.2d 609, 611 (5th Cir. 1980). The phrase "under color of state law" found in 42 U.S.C. § 1983, reflects the "state action" requirement of the Fourteenth Amendment, consequently both phrases express the same legal principle. *Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873, 877, n.7 (5th Cir. 1975), *cert. denied* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975); *Parish v. National Collegiate Athletic Association*, 506 F.2d 1028, 1031, n.6 (5th Cir. 1975).

■ Appellants argue that the actions of Mendenhall in discharging or transferring Medicaid patients without notice or opportunity for a hearing, are properly attributable to the state; however, this argument was recently considered and rejected by the United States Supreme Court in the case of *Blum v. Yaretsky*, —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed. 534 (1982).

In *Blum*, representatives of the class, consisting of Medicaid recipients, challenged decisions made by nursing homes to discharge or transfer patients without notice or opportunity for a hearing. It was argued that the actions of the nursing homes were in effect those of the state, because the state regulated the nursing homes and also adjusted the benefits of Medicaid patients when they were discharged or transferred.

Although state regulations required periodic review of the patient's appropriate level of care, the Court held that they did not "dictate the decision to discharge or transfer" a particular patient. *Id.*, at ——, 102 S.Ct. 2789. Rather, the decisions to discharge or transfer were characterized by the Court as ultimately turning "on medical judgments made by private parties according to professional standards that are not established by the State,"[13] *Id.*, at ——, 102 S.Ct. 2788, and the fact that the state responded to such decisions by adjusting the benefits of the Medicaid recipient did not render the state responsible for those private decisions. *Id.*, at ——, 102 S.Ct. 2786.

---

**13.** It should be noted, however, that in the case sub judice the decision to discharge was not based on any professional standards and was contrary to federal regulations. In the report of the hearing officer, made pursuant to the consent decree, it is stated: " ... reasonable advance notice was not given ...". It was found that Mrs. Taylor was discharged in a "precipitate action" initiated by the administrator of Mendenhall. The hearing officer further found that the discharge was not for medical reasons, but rather that it resulted from the actions of Mrs. Taylor's family members. He recommended that the Commission take no action against the nursing home, even though he found Mrs. Taylor did not receive proper notice. He based this recommendation on the fact that though Mendenhall was technically out of compliance with the requirements of the federal regulations, the standard violated was only one of many standards to be met by the facility. It was recommended that the Commission bring the policies and procedures for transfer and discharge to the attention of the nursing home.

Accordingly, since the decision of the private nursing home to discharge Mrs. Taylor was not under "color of state law", the appellants have failed to state a claim upon which relief could be granted.

## CAUSE OF ACTION UNDER THE SOCIAL SECURITY ACT

Appellants' final argument is that the district court was in error in dismissing the claim under the Social Security Act, 42 U.S.C. § 1396, et seq. They assert that this cause of action is a pendant statutory claim and that it may be enforced through 42 U.S.C. § 1983.

 It has, of course, been established that the Social Security Act affords no private right of action. See *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 1361–1362, 39 L.Ed.2d 662 (1974). Section 1983 is the exclusive statutory cause of action available to secure compliance with the provisions of the Social Security Act on the part of participating states. *Thiboutot, supra*, 448 U.S. at 5–6, 100 S.Ct. at 2504–2505. Any action under § 1983 requires a showing that the acts complained of occurred under color of state law. Since the actions of the private nursing home in discharging or transferring Mrs. Taylor were not those occurring under color of state law, appellants' statutory claim fails to satisfy the requirements of a § 1983 action.

## CONCLUSION

Other than those claims for relief satisfied by the consent decree, the appellants have failed to state any claim for which relief could be granted. The consent decree has been performed; therefore, we affirm the decision of the district court denying the other claims for relief. The consent decree, having been rendered in a matter in which the district court had jurisdiction, is not vacated either by the district court judgment or by this affirmance.

AFFIRMED.