**Mauritzio BERNI, Armando Berni, and Claudio Massari, Individually and/or as Former Shareholders of SRL L'Originale Alfredo All'Augusteo on Behalf of SRL L'Originale Alfredo All'Augusteo, Plaintiffs–Appellants,**

v.

**INTERNATIONAL GOURMET RESTAURANTS OF AMERICA, INC., Alfredo, the Original of Rome (NY), Inc., IGRA of New York, Inc., Kilgale, Ltd., and Guido Bellanca, Defendants–Appellees.**

No. 19, Docket 87–7079.

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1987.

Decided Jan. 29, 1988.

Howard I. Schuldenfrei, New York City (Francesco Petralia, Rome, Italy, of counsel) for plaintiffs-appellants.

Edward H. Rosenthal, New York City (Frankfurt, Garbus, Klein & Selz, P.C., New York City, of counsel) for defendants-appellees Intern. Gourmet Restaurants of America, Inc., Alfredo, The Original of Rome, (N.Y.), Inc., IGRA of New York, Inc., and Guido Bellanca.

Lee Robinson, New York City (Curtis Morris & Safford, Edward H. Rosenthal, Frankfurt, Garbus, Klein & Selz, P.C., New York City, of counsel) for defendant-appellee Kilgale, Ltd.

Before CARDAMONE, WINTER and MINER, Circuit Judges.

MINER, Circuit Judge:

Mauritzio and Armando Berni and Claudio Massari (collectively the "Bernis") appeal from a judgment dismissing their claims of unfair competition, false description and trademark infringement for lack of standing. Appellants contend that ownership of the United States registration of an Italian mark devolved to them from their predecessors-in-interest. They seek to enforce their alleged rights in the registration against those, presently using it in the United States, who are the assignees of the registrant. Appellees move this Court for an award of attorneys fees and double costs under Fed.R.App.P. 38. We find that appellants have not established standing to pursue this action and, therefore, we affirm the judgment of the district court. We deny appellees' request for sanctions.

## BACKGROUND

Appellants filed suit under the Lanham Act, 15 U.S.C. §§ 1051–1127 (1982 & Supp. IV 1986), to resolve disputed rights in a trade and service mark designed by Italian restauranteur Alfredo DiLelio ("Alfredo").[1] Although he never registered the mark, Alfredo used it to market his restaurant businesses and his signature culinary creation, Fettucine Alfredo.

The appellants are heirs and assigns of partners in an Italian "Societa di Fatto," later reconstituted as a corporation under the name "SRL L'Originale Alfredo All'Augusteo" ("L'Originale Alfredo"). This entity owned and operated a restaurant founded in 1950 by Alfredo in Rome, Italy. The appellants' predecessors-in-interest, two of the three original stockholders in L'Originale Alfredo, were Alfredo DiLelio's daughters, Emilia and Elda. Alfredo's son, Armando, was the third principal in L'Originale Alfredo. Appellants claim rights, not only as the heirs and assigns of Emilia and Elda, but also as former shareholders of L'Originale Alfredo, although they divested themselves of their stock in the Italian enterprise before this action was commenced.

The appellees include certain American corporations allegedly involved in a fraudulent scheme to appropriate Alfredo's mark and use it to promote restaurants in the United States. Named along with these corporate defendants is Guido Bellanca, the principal in the American restaurant businesses, and, according to appellants, a business associate of Alfredo's son, Armando. Kilgale, Ltd. ("Kilgale"), purportedly used by Bellanca and Armando as an intermediate purchaser of the mark to conceal the fraud, is also a defendant.

We accept the allegations of the complaint as true for the purposes of this motion to dismiss, see *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 64 (2d Cir.1986); *FRA S.p.A. v. Surg-O-Flex of America, Inc.*, 415 F.Supp. 421, 424 (S.D.N.Y.1976). The complaint alleges that Armando registered the mark (first in Italy, and then, claiming the benefits of section 44 of the Lanham Act, 15 U.S.C. § 1126, in the United States) and transferred the mark to Bellanca through Kilgale. Bellanca then used the mark in connection with restaurants bearing the name "Alfredo's, the Original of Rome." Appellants claim that this scheme was initiated and facilitated by Armando, who registered his father's mark without Emilia and Elda's knowledge.

Alfredo devised the mark now in dispute for use in connection with the Rome restaurant he established in 1914, "Alfredo Alla Scrofa," renowned for its Fettucine Alfredo. In 1950, Alfredo sold Alla Scrofa and opened another establishment called "Alfredo, Il re delle Fettucini." His children, Armando, Emilia and Elda, worked with him in the business. By March 1959, Armando owned a half interest in the restaurant.

After Alfredo's death, Emilia and Elda sued Armando in the Italian courts, alleg-

---

1. The mark is a fettucine-laden fork crossed by a spoon, suspended over a bowl which itself sits above a world globe. It bears the inscription "L'Originale Alfredo All'Augusteo. Il re delle fettucine" (The original Alfredo, near Augusteo. The king of fettucine).

ing that he was attempting to wrest ownership and management control of the restaurant from them. They sought a declaration that the business was an Italian "Societa di Fatto" in which each child held a share. In December 1971, the court recognized the societa and assigned Armando a four-sixth share; each sister took one-sixth of the business.

In 1970, while the dispute over ownership of the restaurant was pending, Armando submitted an application, without his sisters' knowledge or consent, to the Italian authorities for registration of Alfredo's mark. That registration was granted two years later to "Ristorante Alfredo at Rome." Toward the end of 1970, or early in 1971, Armando also applied to register the mark in the United States. In July 1972, shortly after the Italian registration was issued, Armando, "doing business as Ditta Ristorante Alfredo," was granted a U.S. trade and service mark based on the Italian registration, *see* 15 U.S.C. § 1126(c)–(e).

In 1975, the siblings reorganized the societa into a corporation, L'Originale Alfredo. A list of assets (not including the Italian or U.S. registered marks) was prepared under the supervision of an Italian court. Emilia, Elda and Armando took shares in the corporation equal to their interests in the societa. Shortly thereafter, L'Originale Alfredo assumed operation of the Rome restaurant. In 1977, Armando, accompanied by Bellanca, traveled to the United States on behalf of L'Originale Alfredo to explore opportunities for expansion of the Italian restaurant business here. Subsequently, Armando advised the corporation not to enter the American market.

At or about the same time, Bellanca formed defendant International Gourmet Restaurants of America, Inc. ("IGRA") and opened a restaurant in New York City. Later, the restaurant business expanded to other U.S. cities. Sometime prior to 1981, Armando assigned his rights in the U.S. mark to Kilgale. On January 6, 1981, IGRA took an assignment of the mark from Kilgale. IGRA used the U.S. registered mark in promoting its business and exhibited portraits of Alfredo in its restaurants.

Before they died, Emilia and Elda assigned their rights in L'Originale Alfredo to their sons, appellants here. In 1985, the sons sold their interests in the Italian corporation to Armando's widow.

The Bernis commenced this action in May 1986. Their complaint alleged that the American restaurants' use of the mark, in connection with a scheme involving the other defendants, constituted infringement of the mark and unfair competition, in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114; that the mark had acquired a secondary meaning and defendants' actions were taken in an attempt to "pass off" services and products of the American restaurants as those of L'Originale Alfredo, actionable under the common law of unfair competition; and that the use of the mark was a false designation of origin and false description of the services and products that the American restaurants offer, in violation of section 43(a) of the Act, 15 U.S.C. § 1125(a). The Bernis demanded damages, an injunction against further use of the mark, and declaratory relief, including a declaration that Armando's registration inured to the benefit of their predecessors-in-interest, who held an undivided interest in it independent of their shares in L'Originale Alfredo, and that the Bernis succeeded to this interest.

Judge Duffy dismissed the complaint on the grounds that the appellants lacked standing to bring the suit. He rejected their contention that, because the mark was not listed among the assets transferred from the societa to L'Originale Alfredo, Emilia and Elda retained rights in the mark that devolved to their sons. Judge Duffy also dismissed appellants' action "on behalf of" L'Originale Alfredo because the Bernis were not, as of the time the action was commenced, shareholders in the corporation. For the reasons that follow, we affirm the district court's judgment.

## DISCUSSION

*The Infringement Claim*

■ Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), grants standing to assert

a claim for trademark infringement solely to the "registrant." Under the Act, that term includes the registrant and its "legal representatives, predecessors, successors and assigns." *Id.* § 1127; *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 622 (2d Cir.1980). We conclude that appellants have not pleaded facts that establish their standing under section 1114.

■ At the outset, we reject the Bernis' suggestion that U.S. concepts of trademark rights should not apply to domestic registrations of foreign marks under section 44 of the Lanham Act. As we observed in *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 641 (2d Cir.), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), any right accorded to foreign nationals under section 44 "has its source in, and is subject to the limitations of, American law, not the law of the foreign national's own country." *See also* 15 U.S.C. § 1126(f) (stating that U.S. registration of foreign marks is independent, and "duration, validity, or transfer in the United States of such registration shall be governed by the provisions" of the Lanham Act). Appellants' rights in the mark must be established with reference to U.S. law.

The complaint suggests two bases for standing: that appellants are entitled to enforce L'Originale Alfredo's rights in a derivative action, and that the American mark devolved to the Bernis as property independent of their predecessors' interests in L'Originale Alfredo because the mark was never listed among the assets transferred from the societa to the Italian corporation. We agree with the district court that, as former shareholders, the Bernis cannot pursue a derivative action, and we focus on the merits of appellants' other standing theory.

■ Appellees challenge this theory as based on the false premise that rights in a mark may exist independent of the business goodwill to which they are appurtenant. A trademark is a mere symbol of the goodwill of the business with which it is associated. *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir.1984). As appellees correctly observe, the transfer of a trademark or trade name without the attendant goodwill of the business which it represents is, in general, an invalid, "in gross" transfer of rights. *See* 15 U.S.C. § 1060 (mark "shall be assignable with the goodwill of the business in which the mark is used"); *Marshak*, 746 F.2d at 929 (forced sale of trade name without goodwill of business invalid); *Universal City Studios, Inc. v. Nintendo Co.*, 578 F.Supp. 911, 922–23 (S.D.N.Y.1983) (beneficial owner of "King Kong" mark could not transfer it independent of goodwill developed by third-party movie studio), *aff'd on other grounds*, 746 F.2d 112 (2d Cir.1984).

We agree with the appellees that the Bernis' contentions run afoul of the well-established principle that a mark is not property that may be assigned "in gross." The extent of any trademark right is defined by its actual use in the marketplace. *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 663–64 (2d Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). The appellants assert that their predecessors held the mark without using it, and that their rights in the mark subsequently descended, independent of any interest in an ongoing business, as if they were common property. This theory does not comport with the law of trademarks: "Trademark rights do not exist in the abstract, to be bought and sold as a distinct asset." *Nintendo*, 578 F.Supp. at 922.

■ Of course the question whether a mark has been severed from its goodwill may not always be an easy one. We have recognized that a trademark may be retained by its owner even though the existing business' assets are sold. *See Defiance Button Machine Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1061 (2d Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). Where the owner has sold its equipment, inventory and other assets, discharged its work force and announced that it has discontinued manufacturing its products, it may nevertheless retain a protectable interest in its mark, if it evidences an intention not to abandon the mark. *Id.* at 1059–61. That intention can

be inferred from evidence that the owner is undertaking to resume use of the mark within a reasonable time after the sale of the other assets. *Id.* at 1060.

■ Similarly, rights in a U.S. trademark may survive the expropriation or forced liquidation of a business, where the owners of that business continue producing their product under the mark in another country, *see Baglin v. Cusenier Co.,* 221 U.S. 580, 595–96, 31 S.Ct. 669, 673, 55 L.Ed. 863 (1911), or where the court finds an intention on the part of the former owners to reestablish business in the United States despite the actions of a foreign sovereign, *see, e.g., F. Palicio y Compania v. Brush,* 256 F.Supp. 481, 492 (S.D.N.Y.1966), *aff'd,* 375 F.2d 1011 (2d Cir.), *cert. denied,* 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967). In such cases also, the intent of the trademark owner to abandon use of its mark is a critical issue.

■ As we held in *Defiance Button Machine,* in order for the owner of a mark to retain, upon sale of the business associated with the mark, the right to resume using the mark in a new enterprise, the owner's intent to resume producing substantially the same product or service must be manifest, some portion of the goodwill of the previous business must remain with the owner, and resumption of operations must occur within a reasonable time. 759 F.2d at 1060. Otherwise, the owner's attempt to assert a protectable interest in the marks must fail, *see id.* at 1059–60, since the owner will hold the mark "in gross," *see Marshak,* 746 F.2d at 929.

Thus, to maintain an action under this theory, appellants must plead facts that permit the inference that Emilia and Elda did not intend to transfer their interest in the mark to the corporation, but instead intended to retain it as their own, and to resume business under the mark within a reasonable time. In their brief, appellants posit "the continued existence of the 'societa di fatto' or the existence of divisible or separable United States trademark rights, which remained an asset of the partners or partnership," as a basis for recovery. As support for this claim they point to the

absence of the mark from the list of assets transferred to L'Originale Alfredo. As the complaint indicates, however, at the time L'Originale Alfredo came into existence, the sisters did not know the U.S. registrations existed. Even the most liberal reading of this aspect of the complaint would not allow us to infer a colorable claim that Emilia and Elda intended to retain an interest in the mark.

Nor have the Bernis alleged anything that would support the inference that Emilia and Elda intended to continue the business of the societa, independent of L'Originale Alfredo. The U.S. mark conveyed with it the exclusive right to expand the Italian business to the United States under the mark long associated with the societa's restaurant business in Italy. *Cf. La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.,* 495 F.2d 1265, 1271 (2d Cir.1974). Yet, the complaint is devoid of facts that might establish the sisters' intention to expand the societa's business to the U.S. after the societa transferred its assets to L'Originale Alfredo. In fact, the appellants have yet to describe any activity, either by the societa or the sisters, that would support the conclusion that Emilia and Elda intended to continue the business of the societa after the transfer.

In light of this failure of pleading, we must conclude that the Bernis lack standing to pursue rights as owners of the U.S. registration. The complaint as presently crafted would, at best, establish that, after the transfer of assets to L'Originale Alfredo, Emilia and Elda retained only an "in gross" interest in the U.S. registration. Therefore, regardless of how that interest devolved to the Bernis, it conferred no protectable rights in the registration, and, therefore, no standing. Dismissal of the infringement claim was proper.

*The Section 43 Claim*

■ Appellants challenge appellees' use of the mark as an attempt to misrepresent their goods and services as those of L'Originale Alfredo in a manner that is likely to cause consumer confusion as to their source. Section 43 of the Lanham Act, 15 U.S.C. § 1125, allows any person who "be-

lieves that he is or is likely to be damaged" by false representations concerning the origin or qualities of another's goods or services to institute an action. 15 U.S.C. § 1125(a). However, this court has limited standing to assert a section 43 claim to a "purely commercial class" of plaintiffs. *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 692 (2d Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971). Although a section 43 plaintiff need not be a direct competitor, *Camel Hair and Cashmere Inst. of America v. Associated Dry Goods Corp.*, 799 F.2d 6, 11 (1st Cir.1986); *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 357 (2d Cir.1983); *Colligan*, 442 F.2d at 692; 1 J. Gilson, Trademark Protection and Practice § 7.02[3] (1987) (hereinafter "Gilson"), it is apparent that, at a minimum, standing to bring a section 43 claim requires the potential for a commercial or competitive injury. *See* 1 Gilson, § 7.02[3] at 7–25 (commercial or competitive injury must be alleged); *see also Colligan*, 442 F.2d at 692 (statute protects against commercial, not consumer, injury).

As discussed above, appellants have no ownership interest in the mark. Further, they have alleged no facts suggesting a present commercial interest: They do not offer goods or services, nor are they considering establishing a commercial venture in the future, *see, e.g., National Lampoon, Inc. v. American Broadcasting Co.*, 376 F.Supp. 733, 746 (S.D.N.Y.) (plaintiff's standing established by allegation of plans to expand into television market where potential confusion would arise), *aff'd*, 497 F.2d 1343 (2d Cir.1974). Nor have the Bernis alleged facts exhibiting a direct pecuniary interest to be protected, *see PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 124–25 (2d Cir.1984). Therefore, we must conclude that they are without standing to assert a claim for present injury under section 43.

*Other Claims*

■ The remainder of the Bernis' claims merit little discussion. Their requests for damages flowing from past infringement, unfair competition and section 43 violations are claims that arose at the time appellants held an interest in L'Originale Alfredo. These causes of action, however, were not personal to appellants, but were based on rights of the corporation of which the appellants were shareholders. To the extent that the Bernis now assert those corporate rights as individuals, we cannot consider their suit. While L'Originale Alfredo may retain some claim to sue for the past wrongful conduct of appellees, the decision to assert that claim is a matter of corporate governance, and the right to damages is tied to the corporation's business goodwill. Therefore, appellants' failure to assert these claims before divesting themselves of their interest in the corporation emerges as a fatal flaw in their argument for standing.

■ The Bernis' claim under the common law of unfair competition also must fail. The source of the rule of law in such an action is not federal, but state law. *See Jean Patou*, 495 F.2d at 1270 n. 5. Under New York law, a party need not be a direct competitor to institute an unfair competition action. *Metropolitan Opera Ass'n v. Wagner–Nichols Recorder Corp.*, 199 Misc. 786, 795–96, 101 N.Y.S.2d 483, 491–92 (Sup.Ct.1950), *aff'd mem.*, 279 A.D. 632, 107 N.Y.S.2d 795 (1951). At a minimum, however, the law is meant to protect "property rights of commercial value" and a plaintiff must establish such rights as a prerequisite to relief. *See id.* at 796, 101 N.Y.S.2d at 492–93. We have already noted the lack of pleaded facts supporting a colorable property or pecuniary interest. Accordingly, relief under the common law is unavailable.

■ Appellants' request for declaratory relief was properly dismissed. Prayers for declaratory relief must have some basis in "a case of actual controversy." 28 U.S.C. § 2201 (1982 & Supp. III 1985). In the absence of such a controversy, the court lacks jurisdiction to grant such relief. *Crown Drug Co. v. Revlon, Inc.*, 703 F.2d 240, 243 (7th Cir.1983); *Salomon Bros., Inc. v. Carey*, 556 F.Supp. 499, 500 (S.D.N.Y.1983). As this Court has noted, 28 U.S.C. § 2201 does not create an independent basis for federal jurisdiction. *Warner–*

*Jenkinson Co. v. Allied Chemical Corp.,* 567 F.2d 184, 186 (2d Cir.1977). Thus, "an action for declaratory judgment may be brought in federal court ordinarily only if there would exist a basis for federal jurisdiction in a coercive action between the two parties." *Id.; see Stop The Olympic Prison v. United States Olympic Comm.,* 489 F.Supp. 1112, 1117–18 (S.D.N.Y.1980) (answer and counterclaim asserting Lanham Act claims sufficient to establish jurisdiction over request for declaratory relief). We have concluded that the dispute between these parties, as pleaded, states no federal claim. The complaint, as drawn, presents no "real question of conflicting legal interests." *Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp.,* 257 F.2d 485, 489 (3d Cir.1958); *cf. Wembley Inc. v. Superba Cravats, Inc.,* 315 F.2d 87, 90 (2d Cir.1963) (plaintiff alleged no basis for declaratory judgment where presently not infringing patent, nor were any facts alleged indicating that plaintiff otherwise had standing to challenge defendant's patent).

 Although we find for appellees, we do not agree with their contention that this appeal was frivolous. The extent of our attention to appellants' arguments attests to the difficulty of many of the questions presented. We therefore decline to grant the request for fees and double costs.

### CONCLUSION

The Lanham Act is not designed as a remedy for all conceivable commercial wrongs, nor is the class of potential plaintiffs unlimited. On the strength of the present complaint, we cannot offer appellants redress for the wrongs they allege. The judgment of the district court is affirmed and the complaint dismissed for lack of standing.