**PDK LABS, INC., Plaintiff–Counter–Defendant–Appellee,**

v.

**Mitchell K. FRIEDLANDER, Defendant–Counter–Claimant–Appellant.**

No. 117, Docket 95–9159.

United States Court of Appeals, Second Circuit.

Argued Sept. 9, 1996.

Decided Jan. 9, 1997.

Gerard C. Fallon, Hackensack, NJ (Sonageri & Fallon, of counsel), for Defendant–Counter–Claimant–Appellant.

Hartley T. Bernstein, New York City (Bernstein & Wasserman, L.L.P., of counsel), for Plaintiff–Counter–Defendant–Appellee.

Before: FEINBERG, MINER and PARKER, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Mitchell K. Friedlander appeals from an award of summary judgment against him in the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., J., in favor of plaintiff PDK Labs, Inc. in its declaratory judgment action under 28 U.S.C. § 2201. The district court found that Friedlander lacks standing to bring suit against PDK for alleged violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Georgia False Advertising Law, Ga.Code Ann. § 10-1-421, and the Georgia Uniform Deceptive Trade Practices Act, Ga.Code Ann. § 10-1-370 et seq. The district court also dismissed Friedlander's counterclaims under these same statutes on grounds of res judicata and judicial estoppel arising from a related suit by Friedlander against PDK in Georgia. For reasons set forth below, we affirm.

I. Facts and Prior Proceedings

PDK is a New York corporation that manufactures, sells, and distributes weight loss products,[1] including Thermo Diet for Men, Thermo Diet for Women, Trym Tone 1200, Figure Trim, Slimmers Tabs, and the Grapefruit Diet Plan. Friedlander, a Georgia resident and self-described expert in the marketing of weight loss products, is currently developing a weight loss product containing ephedrine, caffeine and aspirin (ECA).

In 1991, Friedlander obtained a patent on a method for producing or maintaining weight loss by administering ECA, and has also commissioned several clinical trials of ECA. However, Friedlander admits that he does not yet market a weight loss product to the general consuming public. He describes his "product" as "his patent or his studies, formula, marketing concepts, etc." for a weight loss product containing ECA. Friedlander markets this product to potential investors to obtain funds needed to develop, test and market a weight loss product approved by the Food and Drug Administration (FDA).

From July through October 1993, Friedlander's New York attorney Gerard Fallon contacted PDK or its subsidiary, alleging that several of its weight loss products violated his ECA patent and that PDK's sale of these products constituted "flagrant violations" of the false advertising provision of the Lanham Act. 15 U.S.C. § 1125(a). In October 1993, after failed attempts to either settle his alleged claims or induce PDK to invest in his undeveloped ECA product, Friedlander sent PDK a "Demand for Relief" under the Georgia Fair Business Practices Act (GFBPA), Ga.Code Ann. § 10-1-390 et seq., and warned that he would assert other legal claims as well.

In November 1993, in response to these threats, PDK filed this declaratory judgment action (the New York action), seeking a declaration that "Friedlander has no standing to bring any lawsuit against PDK arising from PDK's advertising, and sale of" its weight loss products. Thereafter, Friedlander moved to dismiss the action for lack of personal jurisdiction. The district court denied the motion, finding that Friedlander had conducted sufficient business in New York "through his attorney and agent" to warrant jurisdiction under the New York long-arm statute. Friedlander then asserted counterclaims challenging PDK's advertising under § 43(a) of the Lanham Act, the Georgia False Advertising Law (GFAL), and the Georgia Uniform Deceptive Trade Practices Act (GUDTPA). In substance, Friedlander asserts that PDK's advertising falsely represents that its products are FDA-approved (and therefore lawfully sold), safe and effective. He seeks principally to enjoin sale of PDK's products until PDK either obtains FDA approval or changes its product labels to state explicitly that its products have no such approval.

---

1. The parties vigorously contest, as relevant to the standing issue, whether PDK is selling weight loss "drugs," as Friedlander contends, or "dietary supplements" that the FDA regulates less stringently than drugs, as PDK maintains. Because resolution of this question is not necessary to our holding, we express no opinion on the issue and use the term "weight loss products" to describe both parties' products.

Meanwhile, Friedlander was also proceeding in the Georgia courts with his attempt to curtail PDK's allegedly false advertising. Days after PDK filed the New York action, Friedlander commenced suit in Fulton County Superior Court, Georgia (the Georgia action), alleging that PDK's marketing of weight loss products in Georgia violated the Georgia Fair Business Practices Act (GFBPA). In February 1994, after PDK removed the case to the United States District Court for the Northern District of Georgia, that court dismissed Friedlander's claim. The court held that Friedlander lacked standing under the GFBPA because the statute allows suit by plaintiffs only in their individual capacity seeking to "serve the public interest" rather than to advance purely private concerns. Soon after, Friedlander appealed this dismissal to the United States Court of Appeals for the Eleventh Circuit.

In August 1995, Judge Patterson granted PDK's motion for summary judgment in the New York action and dismissed Friedlander's counterclaims. The court determined that "Friedlander is without standing to sue PDK for violations of the Lanham Act, the GFAL and GUDTPA," because "Friedlander may not claim that PDK is injuring his competing product which does not exist." With respect to Friedlander's counterclaims, Judge Patterson first observed that his holding on PDK's declaratory judgment action that Friedlander lacks standing applied equally to defeat his counterclaims. The judge went on to rule that the counterclaims were also barred by res judicata given Friedlander's failure to raise them in the Georgia action. (The Georgia district court's dismissal of that action was at the time still pending on appeal to the Eleventh Circuit.) Finally, Judge Patterson held that Friedlander was judicially estopped from bringing these counterclaims by his representations to the New York court that the Georgia action would litigate all claims arising from PDK's marketing and sale of weight loss products.

In Friedlander's appeal of the Georgia action, the Eleventh Circuit certified to the Georgia Supreme Court the question whether "non-consumers have a cause of action under the [G]FBPA when they allege an injury due to a competitor's misrepresentations to the general consuming public." *Friedlander v. PDK Labs, Inc.,* 59 F.3d 1131, 1133 (11th Cir.1995). In January 1996, the Georgia Supreme Court answered the question in the negative. 266 Ga. 180, 465 S.E.2d 670, 670–71 (1996). In July 1996—after submission of briefs to this Court on this appeal but before oral argument—the Eleventh Circuit affirmed dismissal of the Georgia action based on Friedlander's lack of standing under the GFBPA. 89 F.3d 747, 748–49 (11th Cir.1996).

Friedlander now challenges (1) the denial of his motion to dismiss the New York action for lack of personal jurisdiction; (2) the grant of summary judgment to PDK and the finding that Friedlander lacks standing to sue under the Lanham Act, the GFAL and the GUDTPA; and (3) the dismissal of his counterclaims.

## II. Personal Jurisdiction

In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules "if the federal statute does not specifically provide for national service of process." *Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir.1990) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104–05, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987)). We review de novo a district court's finding that it has personal jurisdiction over a defendant. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir.1986). A plaintiff facing a Fed.R.Civ.P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990). Moreover, we construe the pleadings and affidavits in plaintiff's favor at this early stage. *CutCo,* 806 F.2d at 365. We are mindful that personal jurisdiction inquiries are "necessarily fact sensitive because each case is dependent upon its own particular circumstances." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1991).

Judge Patterson found that Friedlander "through his attorney and agent, was conducting business in New York, i.e., specifically enforcing defendants' patent rights from New York and seeking investments in defendants' product from New York." The judge did not indicate the section of New York's long-arm statute on which he based jurisdiction. We find that PDK made a sufficient prima facie showing of jurisdiction under N.Y. CPLR § 302(a)(1), which states that jurisdiction exists over a non-domiciliary defendant who "in person or through an agent ... transacts any business within the state" as long as the cause of action arises out of the defendant's New York transactions. As the New York Court of Appeals has explained, "proof of one transaction in New York is sufficient to invoke jurisdiction [under 302(a)(1)], even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40, 43 (1988); see *CutCo*, 806 F.2d at 365. A cause of action arises out of a defendant's New York transactions when it is "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir.1985); see *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir.1996) (requiring a "substantial nexus" between the business transacted and plaintiff's cause of action).

Applying these standards, we conclude that Friedlander transacted business in New York. Despite Friedlander's contentions to the contrary, his activity in New York reaches beyond merely sending a "cease and desist" letter to PDK and attempting to settle alleged legal claims. Cf. *Modern Computer Corp. v. Ma*, 862 F.Supp. 938, 945 (E.D.N.Y.1994) ("sending of a cease and desist letter [into the forum] ... is *alone* insufficient to establish the minimum contacts necessary for personal jurisdiction") (emphasis added). Friedlander himself describes his "business" as seeking investments in the development of his weight loss product and negotiating royalty agreements with alleged violators of his patents. Attorney Fallon admits in an affidavit—the only document submitted in support of Friedlander's Rule 12(b)(2) motion—that he has represented Friedlander in these pursuits in New York and other states since 1986. PDK's vice-president stated in an affidavit that over a three-month period in 1993, Fallon frequently contacted PDK by phone and letter from his firm's New York City office, purportedly to negotiate a settlement of Friedlander's alleged legal claims. PDK maintains, however, that Friedlander's real purpose was to solicit PDK's investment in his weight loss product. Indeed, in one letter, Fallon asks PDK's counsel to "call so we can explore the investment mode(s) more fully." [2] This persistent campaign by Friedlander's New York agent to secure PDK's investment constitutes business transacted in New York under CPLR § 302(a)(1). See *Barclays Am./Bus. Credit, Inc. v. Boulware*, 151 A.D.2d 330, 542 N.Y.S.2d 587, 587–88 (1989) (personal jurisdiction based on non-domiciliary defendant's retention of New York attorney to negotiate financing agreement in New York on defendant's behalf). PDK's allegations—uncontested in material part—regarding these actions satisfy its prima facie burden.

Moreover, PDK's declaratory judgment action arises from these New York contacts. To determine whether a sufficient nexus exists, a court must evaluate the "totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit." *Hoffritz*, 763 F.2d at 60. As discussed above, Friedlander initiated from New York persistent, vexing communications with PDK with regard to their respective weight loss products. Without ruling on the correctness of PDK's argument that Friedlander's "apparent attempt to extort

---

2. Friedlander argues, without offering any factual support in the record, that he broached the subject of PDK's investment only after PDK requested such information. Regardless of which party initiated the negotiations, the record reflects that Friedlander, through Fallon, actively encouraged PDK's participation in this investment opportunity.

money from PDK" constitutes tortious conduct, we recognize what at the very least appears to be Friedlander's strategy of intertwining legal threats with solicitation of investments in his product. PDK's cause of action, which seeks a declaration that Friedlander lacks standing to bring false advertising claims against PDK, arises out of Friedlander's unique business transactions in New York.[3]

Friedlander responds that when a declaratory judgment is involved, we must examine not the conduct that prompted PDK to file suit but instead the cause of action *anticipated* by the declaratory judgment—Friedlander's false advertising suit—to determine whether a proper nexus exists. He argues that no nexus exists between his New York activity and his suit alleging injury in Georgia from PDK's false advertising. Friedlander relies on the proposition that when a declaratory judgment plaintiff "seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense," which determines whether the court has federal question jurisdiction. *Public Serv. Comm'n of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952); see *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950) (Declaratory Judgment Act did not modify requirement that action must be one "arising under" federal law). Friedlander contends that this court should apply similar analysis when determining personal jurisdiction in a declaratory judgment action.

We reject Friedlander's contention. *Skelly Oil* and its progeny explain that the Declaratory Judgment Act does not expand the *subject matter* jurisdiction of the federal courts to allow suits there that do not arise

under federal law. See 339 U.S. at 671–74, 70 S.Ct. at 878–80; *Cable Television Ass'n of New York v. Finneran,* 954 F.2d 91, 94 (2d Cir.1992). However, we have found no analogous case that discusses the Declaratory Judgment Act's effect, if any, on how to apply state law standards regarding *personal* jurisdiction. Courts in this circuit have found a nexus under CPLR § 302(a)(1) between a plaintiff's declaratory judgment action and a defendant's New York contacts without applying the test Friedlander advocates. E.g., *Agency Rent A Car,* 98 F.3d at 31–32 (declaratory judgment action seeking interpretation of licensing agreement arises in New York, where parties conduct ongoing business under the agreement). In the absence of New York State law to the contrary, we believe it appropriate to evaluate the declaratory nature of PDK's action as only one factor affecting our determination of personal jurisdiction. Under this approach, it is fair to say that the present action arises out of PDK's desire to protect itself from Friedlander's harassing method of transacting "business" in New York.

Certainly, our exercise of personal jurisdiction in this case will not impermissibly expand federal jurisdiction, the concern so evident in *Skelly Oil.* Rather, the concern over personal jurisdiction in federal courts is in that sense bounded by the Due Process Clause, which requires that a defendant have enough minimum contacts with the forum state so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (internal quotations omitted). We may exercise jurisdiction over Friedlander if we find that he has purposefully and sufficiently availed himself of the privileges of conducting business in New

---

**3.** Our decision in *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757 (2d Cir.1983), relied on by Friedlander to negate personal jurisdiction here under N.Y. C.P.L.R. § 301 (which we do not consider), does not compel a different result. In that case, the New York plaintiff brought a declaratory judgment action seeking a ruling that it had not violated the patent of the California defendant. Assuming that the defendant's shipment of goods into New York constituted a transaction of business under § 302(a)(1), the court held that plain-

tiff's declaratory judgment action regarding patent infringement did not arise out of this activity. *Id.* at 763–65. Rather, the cause of action arose from the defendant's sending of a cease and desist letter to plaintiff in New York, which alone did not constitute a sufficient transaction of business to support jurisdiction. *Id.* at 766. As discussed above, Friedlander's contacts with New York differ in both quantity and degree from those deemed insufficient in *Beacon Enterprises.*

York so as to reasonably expect to be subject to suit here. *Agency Rent A Car,* 98 F.3d at 32. Friedlander does not claim that the letters and phone calls Fallon made from New York constitute random or unintentional actions. Friedlander has purposefully availed himself of the New York forum by using Fallon in New York and apparently elsewhere for many years to advance his interest in his unique "product" through soliciting funds and negotiating royalty agreements.

We hold that PDK made a sufficient prima facie showing of personal jurisdiction under CPLR § 302(a)(1) and we therefore do not reach the parties' arguments with respect to other sections of the New York long-arm statute.[4]

### III. Summary Judgment in PDK's Declaratory Action

Friedlander challenges the district court's holding on summary judgment that he lacks standing to sue PDK under § 43(a) of the Lanham Act, the GFAL, and the GUDTPA. We review an award of summary judgment de novo to determine whether there are genuine issues of material fact requiring a trial and whether, based upon the material facts not genuinely in dispute, the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). Although we draw all reasonable inferences in favor of the non-moving party, that party must raise more than "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; see *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) ("conclusory statements, conjecture, or speculation" do not defeat summary judgment). We hold that the district court properly granted PDK summary judgment because Friedlander lacks standing under the relevant statutes.[5]

Section 43(a) of the Lanham Act provides that any person who, with respect to any goods or services, uses in commerce any

> false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (Supp.1996). A plaintiff bringing suit under § 43(a) must

> demonstrate a "reasonable interest to be protected" against the advertiser's false or misleading claims, and a "reasonable basis" for believing that this interest is likely to be damaged by the false or misleading advertising. The "reasonable basis" prong embodies a requirement that the plaintiff show both likely injury and a causal nexus to the false advertising.

*Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2d Cir.1994) (internal citations omitted). In *Berni v. International Gourmet Restaurants of America, Inc.,* 838 F.2d 642 (2d Cir.1988), the court identified a commercial interest, present or contemplated, and a "direct pecuniary interest" as "reasonable interests" that confer standing. *Id.* at 648. However, a plaintiff must make a "more substantial showing" of injury and causation "where the plaintiff's products are not obviously in competition with defendant's products." *Ortho,* 32 F.3d at 694.

We reject Friedlander's elaborate argument that he has a commercial interest to be protected because he and PDK compete in the weight loss product market. The district court stated that there is no "obvious competition between [Friedlander] and PDK," and we agree. The crux of Friedlander's argument is that both his undeveloped

---

4. On this theory, we do not consider whether Friedlander's assertion of a counterclaim waived his defense of lack of personal jurisdiction, an issue on which we have characterized the law as "in disarray." See *Cargill, Inc. v. Sabine Trading & Shipping Co.,* 756 F.2d 224, 229 (2d Cir.1985).

5. The district court found—and both parties agree—that the Georgia statutes and § 43(a) of the Lanham Act use identical standing principles. Thus, we confine our analysis to whether Friedlander has standing under the Lanham Act.

product and PDK's retail products require pre-market FDA approval under the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq.[6] He reasons that if PDK were behaving lawfully, he and PDK would both be competitors in the "weight loss product (development) business" seeking FDA approval for their products. It is "rather unjust," he continues, to deny him standing as PDK's competitor simply because he abides by the FDCA whereas PDK is "flaunting" the requirements of the FDCA for pre-market approval.

Friedlander's arguments with respect to this complex web of federal regulations are beside the point. Friedlander and PDK are not competitors for purposes of Lanham Act standing because Friedlander does not currently sell a retail weight loss product that competes with PDK's products. This holds true whether or not PDK is selling its products lawfully (as to which we express no view). Moreover, although a future "potential for a commercial or competitive injury" can establish standing, see Berni, 838 F.2d at 648, we agree with Judge Patterson that Friedlander's hopes of eventually obtaining FDA approval and selling a retail weight loss product are too remote at this stage to confer standing to challenge PDK's advertising.[7]

Finally, Friedlander argues that he has a "direct pecuniary interest" in pre-serving the value of his patent and royalty income from alleged harm by PDK's advertising. See Berni, 838 F.2d at 648; PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 124–25 (2d Cir.1984) (royalty interest in product competing with defendant's product creates standing for false advertising claim). Friedlander contends that (1) investors are not willing to continue funding his efforts to obtain FDA approval for his product because they observe that other manufacturers sell weight loss products without FDA approval, and (2) PDK's sales reduce the amount of royalty income he receives under ECA licensing agreements with other manufacturers of weight loss products.

Neither alleged pecuniary interest supports standing in this case. Even if we assume they constitute reasonable interests under our Lanham Act jurisprudence, Friedlander has not demonstrated a "reasonable basis" for his belief that PDK's advertising injures his interests. See Ortho, 32 F.3d at 697 (applying the "general rule in our Circuit against making presumptions of injury and causation" to Lanham Act standing question). A plaintiff must submit specific evidence that the defendant's advertising causes direct harm to the product in which the plaintiff claims a pecuniary interest. E.g., Ortho, 32 F.3d at 695–97 (no showing that sales of defendant's cosmetics directly reduced sales

---

6. Friedlander argues that PDK needs FDA approval to sell its weight loss products because they are "drugs," defined in part as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" or "articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1)(B) and (C) (1972 & Supp.1996); see United States v. Ten Cartons, More or Less, of an Article, 72 F.3d 285 (2d Cir.1995) (per curiam) (discussing FDCA's drug/dietary supplement dichotomy). He argues that various organizations, including the National Institute of Health and the U.S. Department of Health and Human Services, classify obesity as a disease, and claims that PDK advertises that its diet pills will produce weight loss in obese or overweight individuals. Friedlander also argues that PDK's products contain ingredients which render them "new drugs" for which FDA approval is required. See 21 CFR § 310.545(a)(20) and (b) (1996). Alternatively, Friedlander argues that even if PDK's products are dietary supplements, see 21 U.S.C. § 321(ff)

(Supp.1996), PDK must obtain FDA approval before making claims that its products can be used to "diagnose, treat, cure, or prevent any disease." See 21 U.S.C. § 343(r)(6)(C) (Supp. 1996); cf. Ten Cartons, 72 F.3d at 287 (holding that FDA can regulate substance as "drug" even if it is a "dietary supplement" under § 321(ff)).

PDK counters that its products are "dietary supplements" for which no FDA approval is necessary. Further, PDK's president alleges in an affidavit submitted to the district court that during periodic FDA inspections of PDK's facilities, the FDA has never objected to PDK's products or advertising, despite access to both.

7. We share the Georgia district court's concern that it is unclear when (if ever) Friedlander will have an FDA-approved, marketable consumer product, see Friedlander v. PDK Labs, Inc., No. 1:93–cv–2706–ODE (N.D.Ga.1994), especially in light of Friedlander's own admission that further "studies ... along with related legal expenses and additional product testing will cost a minimum of $1,500,000.00."

of plaintiff's drug); *PPX Enters.*, 746 F.2d at 125 ("straightforward commercial interests" when defendant's sales directly reduced sales by plaintiff's licensees and netted plaintiff fewer royalties).

In contrast, Friedlander submitted no specific evidence that PDK's products harm his efforts to solicit investments and collect royalties under his patent. Friedlander's evidence of alleged lost investors is scanty at best. He relies on one investor's affidavit, filed on his behalf in a similar suit in Georgia against the advertising of weight loss products by another manufacturer (HMS–PEP). The investor, who operates an automobile dealership in Florida, states only that she is dissuaded from investing further in "research and development" of Friedlander's product by "products similar to it, such as [HMS–PEP's products that] ... continue to be sold in the marketplace without substantiation of their safety and efficacy or undergoing required pre-market approval." This vague statement does not satisfy Friedlander's burden of showing that the existence or marketing of *PDK*'s products reduces investments in his product.

Friedlander's alleged royalty interest suffers from the same defect. At oral argument, Friedlander mentioned that a company in Salt Lake City, Utah, licenses his ECA patent for use in a weight loss product currently on the market.[8] However, as PDK pointed out in reply, Friedlander has not shown that PDK's products or advertising affect sales of this unnamed consumer product in any way. Friedlander's "evidence" comes too late and falls far short of providing a reasonable basis to believe PDK's advertising causes him injury.

 In short, we have found no legal support for the proposition that someone in Friedlander's unique position has standing to challenge the retail advertising of a product already on the market. Rather, Friedlander's dogged insistence that PDK's products are sold without proper FDA approval suggests—as the district court observed in the Georgia action—that Friedlander's true goal

is to privately enforce alleged violations of the FDCA. See *Friedlander v. PDK Labs Inc.*, No. 1:93–cv–2706–ODE (N.D.Ga.1994) (Friedlander's suit represents an "impermissible attempt to enforce the FDCA through a private action"). However, no such private right of action exists. See 21 U.S.C. § 337(a) (restricting enforcement to suits by the United States); *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544 (3d Cir.1994) (no private right of action under FDCA); *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) (dismissing for failure to state a claim plaintiff's "ingenious" attempt to "use the Lanham Act as a vehicle by which to enforce the" FDCA).

We hold that Friedlander lacks standing to sue PDK under § 43(a) of the Lanham Act, and consequently under the GFAL and the GUDTPA, as well.

## IV. Friedlander's Counterclaims

Finally, Friedlander argues that the district court erred in finding that his counterclaims against PDK under the Lanham Act, the GFAL and the GUDTPA were barred by res judicata by reason of the Georgia district court's decision dismissing his GFBPA claim for lack of standing. He also challenges the district court's holding that he is judicially estopped from bringing these counterclaims. We need not reach these issues because we have already found in PDK's declaratory judgment action that Friedlander lacks standing to sue under these statutes.

We affirm the judgment of the district court.

---

8. Ironically, Friedlander admitted at argument that this alleged product, like PDK's, is not FDA-

approved.