Larry MARSHAK, Plaintiff-Appellee,

v.

"Doc" GREEN, John Doe "1", John Doe "2", Bernard Jones, David Rick, and Sandy Wolfe, Defendants,

David Rick, Defendant-Appellant.

No. 178, Docket 84–7401.

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1984.
Decided Oct. 12, 1984.

Susan Freedman, Lackenbach Siegel Marzullo Presta & Aronson, P.C., Scarsdale, N.Y. (Gilbert S. Schapper, New York City, of counsel), for defendant-appellant.

Clark A. Marcus, Marcus & Marcus, New York City, for plaintiff-appellee.

Before MESKILL and PIERCE, Circuit Judges, and POLLACK, District Judge.*

MILTON POLLACK, Senior District Judge:

David Rick, the appellant, manages and promotes musical groups for entertainment under the registered trade name, "VITO AND THE SALUTATIONS". Shortly before the entry of the order complained of on this appeal, Rick was preparing to proceed to trial of his pending suit for infringement of his trade name by a competitor musical group. It was at that point that Larry Marshak, the appellee, holder of an unsatisfied monetary judgment procured three years earlier in this suit against David Rick, obtained *ex parte*, in the Court below, an Order of Attachment and Sale of Rick's trade name.

The Order of the District Court directed the United States Marshal "to attach whatever proprietary interest the judgment debtor, David Rick, may have or claim to have in the registered name VITO AND

---

* The Hon. Milton Pollack, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

THE SALUTATIONS and to sell same at public auction forthwith to satisfy plaintiff's [Marshak's] judgment against said defendant [Rick], to the extent of $17,683, plus accrued interest....'' By an amendment to the initial order, the Court directed one day's advertising notice in a newspaper of general circulation in New York City and that such sale may take place at the offices of the attorneys for the judgment creditor.

The sale was advertised and the Marshal auctioned the appellant's trade name to the plaintiff, and he bought it in for the nominal sum of $100. In fact, no money was received by the Marshal.

Prior to the sale, the defendant, having been apprised of plaintiff's proceedings, moved the Court for a stay of the attachment, execution and sale. In his supporting affidavit he notified the Court of his pending infringement suit against his competitors and of the imminence of its trial. He asserted that the competitive group now represented by Marcus, the attorney who had obtained the money judgment against Rick in 1981, was attempting to effectuate a judicial sale of his rights to the trade name to reap an unfair advantage in the impending infringement trial. Rick's ownership of the trade name had been made an issue in the infringement suit. Rick claimed that Marcus, the attorney for the defendants in the infringement suit had placed the collection of the judgment with the attorneys who had obtained the order below, and that this creates a conflict of interest on the part of Marcus, to the prejudice of Rick's rights in the infringement suit. He urged, moreover, that his right to use the trade name "cannot be the subject of a forced sale."

Rick requested of the Court below protection by a stay of the execution on "that which belongs only to me."

Rick's application herein for a stay of the sale was denied and the Court ordered that the sale of the appellant's interest in the trade name may go forward, but that the purchaser must be given notice that the validity of the trade name was now the subject of litigation before another Judge of the same Court.

On this appeal, the judgment debtor contends that a trade name or mark per se is not a type of property which can be attached or sold at execution auction and that the order directing the same and the action taken thereunder were invalid.

■ Although no case has been found precisely such as this in which a Federal Court has confronted the issue of whether a trade name by itself can be subjected to a forced sale, courts have held that registered trade names or marks may not be validly assigned in gross. A sale of a trade name or mark divorced from its goodwill is characterized as an "assignment in gross."

■ A trade name or mark is merely a symbol of goodwill; it has no independent significance apart from the goodwill it symbolizes. "A trademark only gives the right to prohibit the use of it so far as to protect the owner's goodwill." *Prestonettes, Inc. v. Coty* (1924) 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731; a trademark cannot be sold or assigned apart from to goodwill it symbolizes, *Lanham Act,* § 10, 15 U.S.C.S. § 1060. There are no rights in a trademark apart from the business with which the mark has been associated; they are inseparable, *Pepsico, Inc. v. Grapette Company,* 416 F.2d 285 (8th Cir.1969); *Avon Shoe Co. v. David Crystal, Inc.,* 171 F.Supp. 293, 301, aff'd 279 F.2d 607, *cert. denied,* 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960). Use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another. "[T]he consumers might buy a product thinking it to be of one quality or having certain characteristics and could find only too late to be another. To say that this would be remedied by the public soon losing faith in the product fails to give the consumer the protection it initially deserves." *Pepsico, Inc. v. Grapette Co.,* 416 F.2d 285, 289 (8th Cir.1969). See

also, 1 J. McCarthy, *Trademark and Unfair Competition*, § 18.1, p. 794 (2d ed. 1984).

In a case which touches the issue present herein, *Ward-Chandler Bldg. Co. v. Caldwell*, 8 Cal.App.2d 375, 47 P.2d 758, 760 (1935), a judgment creditor attempted to force the sale of a trademark and goodwill of the debtor's beauty parlor. The attempt was turned aside. The Court there held that a judgment creditor could not force the sale of the trademark and goodwill of the debtor's beauty parlor. "The reason for this is that if the bare right of user could be transferred the name or mark would no longer serve to point out and protect the business with which it has become identified, or to secure the public against deception, but would tend to give a different business the benefit of the reputation established by the business to which the name had previously been applied." *Id.* 47 P.2d at 760. *See also*, 33 C.J.S. *Executions*, § 25, p. 158; 74 Am.Jur.2d *Trademarks*, § 23, pp. 718–19. *Cf. Haymaker Sports, Inc. v. Turian*, 581 F.2d 257 (C.C.P.A.1978) (trademark cannot be given as collateral in security agreements).

It has been pointed out that in the case of a service mark, confusion of the public and consumers would result if an assignee offered a service different from that offered by the assignor of the mark. *See Money Store v. Harris Corp. Finance, Inc.*, 689 F.2d 666 at 678 (7th Cir.1982).

Exceptions do exist. The courts have upheld such assignments if they find that the assignee is producing a product or performing a service substantially similar to that of the assignor and that the consumers would not be deceived or harmed. *See, e.g., Visa U.S.A., Inc. v. Birmingham Trust Nat'l. Bank*, 696 F.2d 1371 (Fed.Cir. 1982) (mark signifying a promise to guarantee a check can be assigned from a supermarket chain to a credit card organization); *Money Store v. Harris Corp. Finance, Inc.*, 689 F.2d 666 (7th Cir.1982); *Glamorene Products Corp. v. Proctor & Gamble & Co.*, 538 F.2d 894 (C.C.P.A. 1976).

Courts have also upheld such assignments if there is a continuity of management. For example, in *Marshak v. Green*, 505 F.Supp. 1054 (S.D.N.Y.1981), defendant unsuccessfully claimed that the assignment of the service mark, "The Drifters," to plaintiff was an invalid assignment in gross. The plaintiff had been the manager of the group prior to the assignment and continued in that capacity after the assignment. The Court found that the plaintiff had promised to protect the mark from infringement and had continued to provide the same singing style. "[T]he essence of what [plaintiff] acquired was the right to inform the public that [he] is in possession of the special experience and skill symbolized by the name of the original concern, and of the sole authority to market its services." *Id.* at 1061.

There was no evidence that this case fits into either of the above exceptions. Entertainment services are unique to the performers. Moreover, there is neither continuity of management nor quality and style of music. If another group advertised themselves as VITO AND THE SALUTATIONS, the public could be confused into thinking that they were about to watch the group identified by the registered trade name.

The appellee obliquely suggested that it was not attaching the trademark per se, but rather the appellant's "... *claim* to a proprietary interest in the trade name which formed the subject matter of the *Rick v. Balsamo* litigation [the case about to go to trial]." However, the order of the District Court was that the Marshal should sell whatever proprietary interest the judgment debtor may have or claim to have in the trade name and not Rick's interest in a cause of action.

The Federal Rules of Civil Procedure, Rule 69(a) provides: "The procedure on execution ... shall be in accordance with the practice and procedure of the state in which the District Court is held," except to the extent that a United States statute governs. Those courts which have considered the issue have determined that state law also determines the type of property which can be subject to execution.

*See Duchek v. Jacobi,* 646 F.2d 415 (9th Cir.1981); *United States ex rel. Goldman v. Meredith,* 596 F.2d 1353 (8th Cir.1979).

■ In New York, a money judgment may be enforced against any debt, which is past due or which is yet to become due, or upon an assignable cause of action. N.Y.C. P.L.R. § 5201(a). The same statute permits enforcement of a money judgment against any property which could be assigned or transferred, whether or not it is vested. N.Y.C.P.L.R. § 5201(b). However, a trade name in gross is not "property" within the meaning of the statute. *Compare Port Chester Electrical Construction Corp. v. Atlas,* 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (N.Y.1976) (creditor can enforce debtor's contractual claims to reimbursement which are due), with *Glenmore Distilleries Co. v. Seideman,* 267 F.Supp. 915, 918 (E.D.N.Y.1967) (a claim in quantum meruit ". . . being only inchoate, uncertain, and contested, has no present value . . ." and is not due certainly or on demand.)

■ Accordingly, the appellee was not entitled to an order directing a levy of execution and sale of the appellant's registered trademark. The order appealed from is reversed and the purported sale is set aside.