Revised June 14, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-31063
_____


SUGAR BUSTERS LLC,

                      Plaintiff-Appellee,

v.

ELLEN C BRENNAN; THEODORE M BRENNAN; SHAMROCK
PUBLISHING INC,

                      Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____
May 25, 1999
Before KING, Chief Judge, and POLITZ and BENAVIDES, Circuit
Judges.

KING, Chief Judge:

       This appeal challenges the district court's grant of a

preliminary injunction prohibiting defendants-appellants from

selling or distributing a book entitled "SUGAR BUST For Life!" as

infringing plaintiff-appellee's federally registered service

mark, "SUGARBUSTERS."  Plaintiff-appellee is an assignee of a

registered "SUGARBUSTERS" service mark and the author of a best-

selling diet book entitled "SUGAR BUSTERS! Cut Sugar to Trim

Fat."  We determine that the assignment of the registered

"SUGARBUSTERS" service mark to plaintiff-appellee was in gross and was therefore invalid, and we vacate the injunction. However, because plaintiff-appellee might still obtain protection for its book title from unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), we remand to the district court to consider plaintiff-appellee's unfair competition claims.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff-appellee Sugar Busters, L.L.C. (plaintiff) is a limited liability company organized by three doctors and H. Leighton Steward, a former chief executive officer of a large energy corporation, who co-authored and published a book entitled "SUGAR BUSTERS! Cut Sugar to Trim Fat" in 1995. In "SUGAR BUSTERS! Cut Sugar to Trim Fat," the authors recommend a diet plan based on the role of insulin in obesity and cardiovascular disease. The authors' premise is that reduced consumption of insulin-producing food, such as carbohydrates and other sugars, leads to weight loss and a more healthy lifestyle. The 1995 publication of "SUGAR BUSTERS! Cut Sugar to Trim Fat" sold over 210,000 copies, and in May 1998 a second edition was released. The second edition has sold over 800,000 copies and remains a bestseller.

Defendant-appellant Ellen Brennan was an independent consultant employed by plaintiff to assist with the sales, publishing, and marketing of the 1995 edition. In addition, Ellen Brennan wrote a foreword in the 1995 edition endorsing the

2

diet plan, stating that the plan "has proven to be an effective and easy means of weight loss" for herself and for her friends and family.  During her employment with plaintiff, Ellen Brennan and Steward agreed to co-author a cookbook based on the "SUGAR BUSTERS!" lifestyle.  Steward had obtained plaintiff's permission to independently produce such a cookbook, which he proposed entitling "Sugar Busting is Easy."  Plaintiff reconsidered its decision in December 1997, however, and determined that its partners should not engage in independent projects.  Steward then encouraged Ellen Brennan to proceed with the cookbook on her own, and told her that she could "snuggle up next to our book, because you can rightly claim you were a consultant to Sugar Busters!"

Ellen Brennan and defendant-appellant Theodore Brennan then co-authored "SUGAR BUST For Life!," which was published by defendant-appellant Shamrock Publishing, Inc. in May 1998. "SUGAR BUST For Life" states on its cover that it is a "cookbook and companion guide by the famous family of good food," and that Ellen Brennan was "Consultant, Editor, Publisher, [and] Sales and Marketing Director for the original, best-selling 'Sugar Busters!™ Cut Sugar to Trim Fat.'"  The cover states that the book contains over 400 recipes for "weight loss, energy, diabetes and cholesterol control and an easy, healthful lifestyle." Approximately 110,000 copies of "SUGAR BUST For Life!" were sold between its release and September 1998.

3

Plaintiff filed this suit in the United States District Court for the Eastern District of Louisiana on May 26, 1998, asserting causes of action for trademark infringement and dilution under 15 U.S.C. §§ 1114 and 1125(c), unfair competition and trade dress infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and trademark dilution, misrepresentation, unfair competition and misappropriation of trade secrets under Louisiana state law.  Plaintiff sought to enjoin defendants-appellants Ellen Brennan, Theodore Brennan and Shamrock Publishing, Inc. (collectively, defendants) from selling, displaying, advertising or distributing "SUGAR BUST For Life!," to destroy all copies of the cookbook, and to recover damages and any profits derived from the cookbook.

The mark that is the subject of plaintiff's infringement claim is a service mark that was registered in 1992 by Sugarbusters, Inc., an Indiana corporation operating a retail store named "Sugarbusters" in Indianapolis that provides products and information for diabetics.  The "SUGARBUSTERS" service mark, registration number 1,684,769, is for "retail store services featuring products and supplies for diabetic people; namely, medical supplies, medical equipment, food products, informational literature and wearing apparel featuring a message regarding diabetes."  Sugarbusters, Inc. sold "any and all rights to the mark" to Thornton-Sahoo, Inc. on December 19, 1997, and Thornton-Sahoo, Inc. sold these rights to Elliott Company, Inc. (Elliott)

4

on January 9, 1998.  Plaintiff obtained the service mark from Elliott pursuant to a "servicemark purchase agreement" dated January 26, 1998.  Under the terms of that agreement, plaintiff purchased "all the interests [Elliott] owns" in the mark and "the goodwill of all business connected with the use of and symbolized by" the mark.  Furthermore, Elliott agreed that it "will cease all use of the [m]ark, [n]ame and [t]rademark [i]nterests within one hundred eighty (180) days."

In support of its request for a preliminary injunction, plaintiff argued to the district court that the recipes in the cookbook did not comport with the "SUGAR BUSTERS!" lifestyle and that consumers were being misled into believing that defendants' cookbook was affiliated with, or otherwise approved by, plaintiff.  Plaintiff asserted that even if its purported service mark is found invalid, plaintiff is still entitled to a preliminary injunction under § 43(a) of the Lanham Act because its title "SUGAR BUSTERS! Cut Sugar to Trim Fat!" has developed a "secondary meaning" in the minds of customers, plaintiff has developed a common law service mark through the seminars it holds regarding the "SUGAR BUSTERS!" lifestyle, and defendants infringed plaintiff's trade dress.

Defendants argued to the district court that plaintiff's service mark is invalid because:  (1) it was purchased "in gross," (2) the term "SUGARBUSTERS" has become generic through third-party use, and (3) plaintiff abandoned the mark by

licensing it back to Elliott without any supervision or control over the retail store in Indiana that continues to operate under the "Sugarbusters" name. Defendants argued that, even if the service mark is valid, their cookbook could not infringe it because the mark is limited to a retail store and a trademark may not be obtained for a book title. Finally, defendants asserted that their use of the title was a "fair use" and that plaintiff is not entitled to an injunction under equitable principles because Stewart breached his agreement with Ellen Brennan and invited her to write the cookbook that is now the subject of this case.

The district court heard evidence relating to the preliminary injunction for three days beginning on June 30, 1998 and entered a preliminary injunction on September 22, 1998 that prohibits defendants from engaging in the sale and distribution of their cookbook, "SUGAR BUST For Life!" See Sugar Busters, L.L.C. v. Brennan, 48 U.S.P.Q.2d 1511, 1512 (E.D. La. 1998). The district court found that plaintiff is the owner of the registered service mark, "SUGARBUSTERS," and that the mark is registered in International Class 16, "information, literature, and books." Id. at 1514. The district court found that the mark is valid and that the transfer of the mark to plaintiff was not "in gross" because

> [t]he plaintiff has used the trademark to disseminate information through its books, seminars, the Internet, and the cover of plaintiff's recent book, which reads "Help

6

Treat Diabetes and Other Diseases."  Moreover, the plaintiff is moving forward to market and sell its own products and services, which comport with the products and services sold by the Indiana corporation.  There has been a full and complete transfer of the good will related to the mark, and the plaintiff has licensed the Indiana corporation to use the mark for only six months to enable it to wind down its operations.

Id.  The district court then considered whether defendants' use of the mark "'creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship'" of the cookbook using the factors we outlined in Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188, 194 (5th Cir. 1998).[1]  Sugar Busters, 48 U.S.P.Q.2d at 1513 (quoting Elvis Presley Enters., 141 F.3d at 193).

The district court found that "plaintiff has established that there is a likelihood of confusion in the minds of customers," that there is a substantial threat plaintiff will suffer irreparable injury without a preliminary injunction, that this threatened injury outweighs any damage that an injunction may cause defendants, and that an injunction will not disserve the public interest.  Id. at 1516.  The court refused to consider defendants' fair-use argument because it was raised for the first

---

[1] The nonexhaustive list of factors relevant to determining the likelihood of confusion that we enunciated in Elvis Presley Enterprises is as follows:  (1) the type of trademark allegedly infringed, (2) the similarity between the marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.  See 141 F.3d at 194.

time in defendants' post-hearing brief, found defendants' equitable argument insufficient to prevent an injunction, and enjoined defendants from engaging in the sale and distribution of "SUGAR BUST For Life!"  See id. at 1517.  Because the district court entered the injunction based on plaintiff's trademark infringement claim, the court declined to analyze or discuss plaintiff's remaining claims.  See id. at 1516.  Defendants timely appeal.


                         II. DISCUSSION

    Defendants argue that the district court erroneously concluded that plaintiff's purported service mark in "SUGARBUSTERS" is valid and that their cookbook infringes the mark.  Defendants also argue that plaintiff's unfair competition claims under § 43(a) of the Lanham Act fail because that section cannot protect a single book title or, alternatively, that remand is necessary because the district court did not consider whether the book title has acquired secondary meaning.  Defendants assert that remand is also necessary on plaintiff's claim that it has an unregistered service mark in "SUGAR BUSTERS!" as a result of the seminars it held promoting the book because the district court did not consider this argument or make any factual finding regarding likelihood of confusion.  Finally, defendants argue that the district court erred by rejecting their arguments

                               8

regarding fair use and equitable principles.  We address each of these arguments in turn.[2]

## A. Standard of Review

We review a district court's ultimate decision to grant a preliminary injunction for an abuse of discretion.  See Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 284 (5th Cir. 1999); Sunbeam Prods., Inc. v. West Bend Co., 123 F.3d 246, 250 (5th Cir. 1997), cert. denied, 118 S. Ct. 1795 (1998).  A preliminary injunction is an extraordinary equitable remedy that may be granted only if plaintiff establishes the following four elements:  (1) a substantial likelihood of success on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any damage that the injunction might cause defendants, and (4) that the injunction will not disserve the public interest.  See Hoover v. Morales, 164 F.3d

---

[2] Defendants also argue that the district court committed reversible error by entering a preliminary injunction without considering whether to impose a bond on plaintiff.  See FED. R. CIV. P. 65(c) ("No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongly enjoined or restrained."); Phillips v. Chas. Schreiner Bank, 894 F.2d 127, 131 (5th Cir. 1990) ("Because of the importance of the bond requirement, failure to require the posting of a bond or other security constitutes grounds for reversal of an injunction.") (internal quotation marks omitted).  Because we vacate the preliminary injunction on other grounds, we need not consider the consequences of the district court's failure to impose, or defendants' failure to request, such security.

221, 224 (5th Cir. 1998); Sunbeam Prods., 123 F.3d at 250. Defendants' arguments challenging the preliminary injunction focus only on the first element--the likelihood that plaintiff will succeed on the merits of its claims. Because this element "presents a mixed question of law and fact, this court must uphold the district court's subsidiary fact findings unless clearly erroneous; conclusions of law and the ultimate application of the law to the facts, however, are freely reviewable." Byrne v. Roemer, 847 F.2d 1130, 1133 (5th Cir. 1988). Finally, plaintiff reminds us that we may "affirm a judgment of the district court if the result is correct, even if our affirmance is upon grounds not relied upon by the district court."[3] Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 804 (5th Cir. 1997), cert. denied, 118 S. Ct. 1050 (1998); see Herwald v. Schweiker, 658 F.2d 359, 362-63 (5th Cir. Unit A Oct. 1981) (applying rule to preliminary injunction).

### B. Plaintiff's Registered Service Mark

A trademark is merely a symbol of goodwill and has no independent significance apart from the goodwill that it

---

[3] Plaintiff argues that we should affirm the district court's preliminary injunction based on its unfair competition claims under § 43(a) if its trademark infringement claim fails. Specifically, plaintiff argues that defendants' book title is likely to cause confusion with respect to plaintiff's book title and with seminars that plaintiff held promoting its book. Plaintiff does not raise, and we do not consider, its trademark dilution, trade-dress infringement, or state-law claims as alternative bases supporting the preliminary injunction.

symbolizes.  See Marshak v. Green, 746 F.2d 927, 929 (2d Cir. 1984); 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:2 (4th ed. 1999) [hereinafter MCCARTHY].  "A trade mark only gives the right to prohibit the use of it so far as to protect the owner's good will . . . ."  Prestonettes, Inc. v. Coty, 264 U.S. 359, 368 (1924) (Holmes, J.).  Therefore, a trademark cannot be sold or assigned apart from the goodwill it symbolizes.  See 15 U.S.C. § 1060 ("A registered mark or a mark for which application to register has been filed shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark.");  Marshak, 746 F.2d at 929.  The sale or assignment of a trademark without the goodwill that the mark represents is characterized as in gross and is invalid.  See PepsiCo, Inc. v. Grapette Co., 416 F.2d 285, 287 (8th Cir. 1969); 2 MCCARTHY § 18:3.

The purpose of the rule prohibiting the sale or assignment of a trademark in gross is to prevent a consumer from being misled or confused as to the source and nature of the goods or services that he or she acquires.  See Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank, 696 F.2d 1371, 1375 (Fed. Cir. 1982).  "Use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another."

11

Marshak, 746 F.2d at 929.  Therefore, "'if consumers are not to be misled from established associations with the mark, [it must] continue to be associated with the same or similar products after the assignment.'"  Visa, U.S.A., 696 F.2d at 1375 (quoting Raufast S.A. v. Kicker's Pizzazz, Ltd., 208 U.S.P.Q. 699, 702 (E.D.N.Y. 1980)).

Plaintiff's purported service mark in "SUGARBUSTERS" is valid only if plaintiff also acquired the goodwill that accompanies the mark; that is, "the portion of the business or service with which the mark is associated."  Id.  Defendants claim that the transfer of the "SUGARBUSTERS" mark to plaintiff was in gross because "[n]one of the assignor's underlying business, including its inventory, customer lists, or other assets, were transferred to [plaintiff]."  Defendants' view of goodwill, however, is too narrow.  Plaintiff may obtain a valid trademark without purchasing any physical or tangible assets of the retail store in Indiana--"the transfer of goodwill requires only that the services be sufficiently similar to prevent consumers of the service offered under the mark from being misled from established associations with the mark."  Id. at 1376 (internal quotation marks omitted); see Marshak, 746 F.2d at 930 ("The courts have upheld such assignments if they find that the assignee is producing a product or performing a service substantially similar to that of the assignor and that the consumers would not be deceived or harmed."); PepsiCo, 416 F.2d

12

at 288 ("Basic to this concept [of protecting against consumer deception] is the proposition that any assignment of a trademark and its goodwill (with or without tangibles or intangibles assigned) requires the mark itself be used by the assignee on a product having substantially the same characteristics."); cf. Money Store v. Harriscorp Fin., Inc., 689 F.2d 666, 678 (7th Cir. 1982) ("In the case of a service mark . . . confusion would result if an assignee offered a service different from that offered by the assignor of the mark.").

The district court found, without expressly stating the applicable legal standard, that "[t]here has been a full and complete transfer of the good will related to the mark." Sugar Busters, 48 U.S.P.Q.2d at 1514. The proper standard, as discussed above, is whether plaintiff's book and the retail store in Indiana are sufficiently similar to prevent consumer confusion or deception when plaintiff uses the mark previously associated with the store as the title of its book. We conclude that even if the district court applied this standard, its finding that goodwill was transferred between Elliott and plaintiff is clearly erroneous.

In concluding that goodwill was transferred, the district court relied in part on its finding that the mark at issue is registered in International Class 16, "information, literature, and books." However, the registration certificate issued by the United States Patent and Trademark Office states that the service

13

mark is "in class 42" and is "for retail store services featuring products and supplies for diabetic people." Id. The district court also relied on its finding that "plaintiff is moving forward to market and sell its own products and services, which comport with the products and services sold by the Indiana corporation." Id. Steward testified, however, that plaintiff does not have any plans to operate a retail store, and plaintiff offered no evidence suggesting that it intends to market directly to consumers any goods it licenses to carry the "SUGAR BUSTERS!" name. Finally, we are unconvinced by plaintiff's argument that, by stating on the cover of its diet book that it may "[h]elp treat diabetes and other diseases" and then selling some of those books on the Internet, plaintiff provides a service substantially similar to a retail store that provides diabetic supplies. See PepsiCo, 416 F.2d at 286-89 (determining that pepper-flavored soft drink and cola-flavored soft drink are not substantially similar and therefore purported assignment was in gross and invalid). We therefore must conclude that plaintiff's purported service mark is invalid. Thus, its trademark infringement claim under 15 U.S.C. § 1114 cannot succeed on the merits and the district court improperly relied on this ground in granting plaintiff's request for a preliminary injunction.[4]

_____

[4] Defendants also argue that plaintiff's purported service mark is invalid because plaintiff offered no evidence demonstrating the validity of the purported assignment from Sugarbusters, Inc. to Thornton-Sahoo, Inc., or Thornton-Sahoo's

14

## C. Unfair Competition Claims

Plaintiff argues that we must still uphold the preliminary injunction because it has demonstrated a likelihood of success on the merits of its claims under § 43(a) of the Lanham Act.[5]  The Supreme Court has recognized that § 43(a) "'prohibits a broader range of practices than does § 32,' which applies to registered marks," and that § 43(a) protects qualifying unregistered marks. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (quoting Inwood Lab., Inc. v. Ives Lab., Inc., 456 U.S. 844, 858 (1982)).  Plaintiff asserts that the district court could have granted the preliminary injunction on the basis of its claim that

---

subsequent assignment to Elliott, and because plaintiff licensed the mark back to Elliott without retaining any supervision or control.  See Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1075 (5th Cir.) ("A trademark owner's failure to exercise appropriate control and supervision over its licensees may result in an abandonment of trademark protection for the licensed mark."), cert. denied, 118 S. Ct. 299 (1997).  Because we find Elliott's purported assignment of the service mark to plaintiff invalid, we need not consider these arguments.

[5] Under § 43(a),

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

defendants' use of the title "SUGAR BUST For Life!" is likely to cause confusion or deceive consumers as to its connection with plaintiff's book, "SUGAR BUSTERS! Cut Sugar to Trim Fat." Additionally, plaintiff argues that it has developed a common law service mark in "SUGAR BUSTERS!" based on seminars it has held promoting its book, and that defendants' title is likely to cause confusion with respect to those seminars.  We consider plaintiff's arguments in turn.

### 1. Plaintiff's Book Title

As a preliminary matter, we must consider defendants' contention that a book title may not receive protection under § 43(a).  Defendants contend that "titles of single literary works are not registerable" as trademarks, and therefore that § 43(a) cannot protect plaintiff's title because the Supreme Court has held "that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)."  Id.; see Thompson Med. Co. v. Pfizer Inc., 753 F.2d 208, 215 (2d Cir. 1985) ("The starting point of our examination [under § 43(a)] is determining whether a mark is eligible for protection.").  Defendants argue that just as generic marks can be neither registered as trademarks nor protected under § 43(a), see Union National Bank of Texas, Laredo, Texas v. Union National Bank of Texas, Austin, Texas, 909 F.2d 839, 844 (5th Cir. 1990) ("Generic terms are

16

never eligible for trademark protection."); <u>A.J. Canfield Co. v. Honickman</u>, 808 F.2d 291, 297 (3d Cir. 1986) (stating that "if we hold a designation generic, it is never protectable"), a single book title is ineligible for trademark registration or § 43(a) protection.

In order to be registered as a trademark, a mark must be capable of distinguishing the applicant's goods from those of others. <u>See</u> 15 U.S.C. § 1052; <u>Two Pesos</u>, 505 U.S. at 768. "Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." <u>Two Pesos</u>, 505 U.S. at 768 (citing <u>Abercrombie & Fitch Co. v. Hunting World, Inc.</u>, 537 F.2d 4, 9 (2d Cir. 1976)). The latter three categories of marks are entitled to trademark protection because they are inherently distinctive--they serve to identify a particular source of a product. <u>See</u> <u>id.</u> Generic marks, in contrast, "'refe[r] to the genus of which the particular product is a species'" and are neither registerable as trademarks, <u>id.</u> (quoting <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U.S. 189, 194 (1985)) (alteration in original), nor protectable under § 43(a), <u>see</u> <u>Thompson Medical</u>, 753 F.2d at 212.[6] The final

---

[6] In their initial appellate brief, defendants state that the term "Sugar Busters" for a diet book title has become generic and is therefore not entitled to any trademark protection. However, in their reply brief, defendants argue that no portion

17

category, consisting of marks that describe a product, "do not inherently identify a particular source, and hence cannot be protected" unless they acquire distinctiveness through secondary meaning.  <u>Two Pesos</u>, 505 U.S. at 769.  Such secondary meaning is achieved when, "'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'"  <u>Id.</u> at 766 n.4 (quoting <u>Inwood Lab.</u>, 456 U.S. at 851 n.11); <u>see</u> <u>Sunbeam Prods.</u>, 123 F.3d at 252 (recognizing that "descriptive marks are entitled to protection only if they have come to be uniquely associated with a particular source"); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 13 (1995) [hereinafter RESTATEMENT] (describing secondary meaning as "acquired distinctiveness").

---

of the district court's opinion "address[es] the genericness issue which has been raised by the Brennans--namely, that the unregistered term 'Sugar Busters' <u>for a diet</u> has become generic." Indeed, defendants argued to the district court that the term "Sugar Busters" is generic for a diet and introduced evidence of a survey where participants supplied "Sugar Busters" as a name for a diet "based upon cutting back on foods high in sugar content," but did not argue that plaintiff's book title, "SUGAR BUSTERS! Cut Sugar to Trim Fat," is generic.  <u>See</u> <u>Soweco, Inc. v. Shell Oil Co.</u>, 617 F.2d 1178, 1183 (5th Cir. 1980) ("A word may be generic of some things and not of others: 'ivory' is generic of elephant tusks but arbitrary as applied to soap."); <u>Blinded Veterans Ass'n v. Blinded Am. Veterans Found.</u>, 872 F.2d 1035, 1041 (D.C. Cir. 1989) ("[W]e accept the general proposition that [w]ords which could not individually become a trademark may become one when taken together.") (Ginsburg, J.) (internal quotation marks omitted); 2 MCCARTHY § 11:27 ("[A] composite mark is tested for its validity and distinctiveness by looking at it as a whole, rather than dissecting it into its component parts.").  Because defendants failed to argue that plaintiff's <u>book title</u> is generic to the district court, we decline to address the issue.

18

Over forty years ago, the Court of Customs and Patent Appeals (the predecessor to the current Federal Circuit) considered whether the title of a single book may be the subject of a trademark. See In re Cooper, 254 F.2d 611, 613-16 (C.C.P.A. 1958). The court determined that, "however arbitrary, novel or nondescriptive of contents the name of a book--its title--may be, it nevertheless describes the book." Id. at 615. As the court explained,

> The purchaser of a book is not asking for a "kind" or "make" of book. He is pointing out which one out of millions of distinct titles he wants, designating the book by its name. It is just as though one walked into a grocery store and said "I want some food" and in response to the question "What kind of food?" said, "A can of chicken noodle soup."

Id. at 614-15; see also International Film Serv. Co. v. Associated Producers, Inc., 273 F. 585, 587 (S.D.N.Y. 1921) ("A title is, if not strictly descriptive, at least suggestive, and not an arbitrary sign . . . . [T]he title is the proper name of a specific thing, not the differential of a species, as in the case of fungibles.") (Hand, J.). The Trademark Trial and Appeal Board has consistently interpreted Cooper as prohibiting the registration of single book titles as trademarks. See, e.g., In re Posthuma, 45 U.S.P.Q.2d 2011, 2012-13 (T.T.A.B. 1998); In re Scholastic Inc., 23 U.S.P.Q.2d 1774, 1776-77 (T.T.A.B. 1992); In re Hal Leonard Publ'g Co., 15 U.S.P.Q.2d 1574, 1576 (T.T.A.B. 1990); In re Nat'l Council Books, Inc., 121 U.S.P.Q. 198, 198-99 (T.T.A.B. 1959).

19

The descriptive nature of a literary title does not mean, however, that such a title cannot receive protection under § 43(a). In fact, the Cooper decision itself recognized that "[i]t is well known that the rights in book titles are afforded appropriate protection under the law of unfair competition." 254 F.2d at 617. If the title of such a single work has acquired secondary meaning, "the holder of the rights to that title may prevent the use of the same or confusingly similar titles by other authors." Rogers v. Grimaldi, 875 F.2d 994, 998 (2d Cir. 1989); see also Trapani v. CBS Records, Inc., 857 F.2d 1475, No. 87-6034, 1988 WL 92438 at *3 (6th Cir. Sept. 2, 1988) (unpublished opinion) ("It is clear that the title to a song cannot be copyrighted as such, or registered as a trademark. However, a title may be protected as a common law trademark if two elements are satisfied: the title has acquired 'secondary meaning,' and the allegedly infringing use of the title creates a substantial likelihood of confusion.") (citations omitted); 2 MCCARTHY §§ 10:1-:5. Thus, for plaintiff to prevail under § 43(a), it must demonstrate (1) that its title has secondary meaning, and (2) that defendants' title is likely to confuse or mislead consumers under the factors set forth in Elvis Presley Enterprises, 141 F.3d at 194.[7]

---

[7] Any finding that defendants' book title is likely to cause confusion with plaintiff's book title must be "particularly compelling" to outweigh defendants' First Amendment interest in choosing an appropriate book title for their work. Twin Peaks

20

Plaintiff must demonstrate a high degree of proof to establish secondary meaning.[8]  See Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 118 (5th Cir. 1979); Thompson Med., 753 F.2d at 217.  Plaintiff must show that "the title is sufficiently well known that consumers associate it with a particular author's work."  Rogers, 875 F.2d at 998; see also Sunbeam Prods., 123 F.3d at 253 (stating that "the primary element of secondary meaning is a mental association in buyer[s'] minds between the alleged mark and a single source of the product") (internal quotation marks omitted).  Because the determination of whether a mark has acquired secondary meaning is primarily an empirical inquiry, "survey evidence is the most direct and persuasive evidence."  Sunbeam Prods., 123 F.3d at 253-54.  Survey evidence is not the only relevant evidence, however--"[i]n addition, the court may consider the length and manner of the use of a mark, the nature and extent of advertising and promotion of the mark, the sales volume of the product, and instances of actual confusion."  Id. at 254; see Pebble Beach Co. v. Tour 18 I Ltd.,

_____

Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1379 (2d Cir. 1993); see Simon & Schuster, Inc. v. Dove Audio, Inc., 970 F. Supp. 279, 296 (S.D.N.Y. 1997); No Fear, Inc. v. Imagine Films, Inc., 930 F. Supp. 1381, 1382-84 (C.D. Cal. 1995).

[8] Plaintiff must show that its title "SUGAR BUSTERS! Cut Sugar to Trim Fat" had developed secondary meaning at the time that defendants allegedly violated § 43(a) by releasing their book, "SUGAR BUST For Life!"  See Braun Inc. v. Dynamics Corp., 975 F.2d 815, 825 (Fed. Cir. 1992); Thompson Med., 753 F.2d at 217; Brooks Shoe Mfg. Co. v. Suave Shoe Corp., 716 F.2d 854, 861 n.17 (11th Cir. 1983).

21

155 F.3d 526, 541 (5th Cir. 1998); Thompson Med., 753 F.2d at 217; 2 McCarthy § 10.13.

Plaintiff asserts that the record is "replete with evidence sufficient to support a ruling [on secondary meaning] by this [c]ourt," including evidence that plaintiff sold over 210,000 copies of its book prior to May 1998, received unsolicited media coverage, used the title exclusively for thirty months, and was intentionally copied by defendants.[9]  Furthermore, plaintiff argues that the district court found secondary meaning in plaintiff's book title when it stated that it "finds that the trademark, SUGARBUSTERS, has gained strength, not only locally, but nationally due to its use in conjunction with the success of the book."  Sugar Busters, 48 U.S.P.Q.2d at 1514.  We disagree with plaintiff's contention that the district court has already considered and found secondary meaning with respect to plaintiff's book title.  The language that plaintiff cites from the district court's opinion pertains to the strength of the registered "SUGARBUSTERS" service mark--a mark we have already

---

[9] Plaintiff also stated at oral argument that "[t]here is a very good survey in [the record] done by a professional pollster for [plaintiff] to show that this secondary meaning exists."  The survey, which was performed at a Louisiana shopping mall in June 1998, asked some respondents whether they had ever heard the name "SUGARBUSTERS!," others whether they had ever heard the name "SUGAR BUST," and asked all respondents whether they thought of "a special enzyme, a diet plan, a low calorie sweetener or something else" when they heard these names.  We fail to see how this survey suggests whether consumers associate the title "SUGAR BUSTERS! Cut Sugar to Trim Fat" with plaintiff or its book.

22

determined was not validly assigned to plaintiff--and the opinion states explicitly that the district court did not consider plaintiff's unfair competition arguments. See id. at 1516. Accordingly, we decline plaintiff's invitation to make such factual findings on our own, and we remand plaintiff's unfair competition claim to the district court so that it can determine whether the book title "SUGAR BUSTERS! Cut Sugar to Trim Fat" had obtained secondary meaning in May 1998 and, if so, whether defendants' book title is so likely to confuse consumers that it outweighs any First Amendment interests defendants have in the title of their book.

## 2. Plaintiff's Seminars

Plaintiff argues that the preliminary injunction should also be upheld under § 43(a) because defendants' book title violates its common law service mark in seminars that it held promoting "SUGAR BUSTERS! Cut Sugar to Trim Fat." Specifically, plaintiff alleges that it has held over one hundred seminars regarding the "SUGAR BUSTERS!" lifestyle since the fall of 1995 and that defendants' book title should be enjoined because it is likely to cause confusion with respect to these seminars.

The district court did not consider plaintiff's argument regarding these alleged seminars and made no factual findings on this issue. We therefore remand plaintiff's claim to the district court so that it may properly determine whether plaintiff used such a mark with these seminars and whether such

23

use was generic, descriptive, suggestive, arbitrary or fanciful. If the district court determines that such use is protectable under § 43(a), the court should determine whether plaintiff has demonstrated "particularly compelling" evidence indicating that consumers are likely to confuse the title of defendants' book with such a mark. See Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1379 (2d Cir. 1993).

### D. Fair Use

Defendants argue that plaintiff cannot prevail on its § 43(a) claims because defendants' use of their book title "SUGAR BUST For Life!" is protected by the fair-use doctrine. See Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1190 (5th Cir. 1980) (applying fair-use defense to § 43(a) claim). The fair-use defense allows a party to use a term in good faith to describe its goods or services, but only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than in its trademark sense. See 15 U.S.C. § 1115(b)(4); Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 791 (5th Cir. 1983); RESTATEMENT § 28 & cmt. c; see also 2 MCCARTHY § 10:14 ("Since the use of a descriptive title cannot serve to prevent others from using the title in a descriptive, non-trademark sense, others may be able to use the title as the only term available."). The fair-use defense does not apply if a term is used as a mark to identify the markholder's goods or services, but the fair use of a term may be protected even if some residual

24

confusion is likely.  See Pebble Beach, 155 F.3d at 545 n.12;

Soweco, 617 F.2d at 1189 n.30 ("[W]e are convinced that even if

there were a likelihood of confusion, the defendant would still

be entitled to its fair-use defense, so long as it had met the

requirements of § 1115(b)(4).  To hold otherwise would

effectively eviscerate the fair-use defense."); RESTATEMENT § 28

cmt. b.  The fair-use defense thus prevents a markholder from

"appropriat[ing] a descriptive term for his exclusive use and so

prevent others from accurately describing a characteristic of

their goods."  Soweco, 617 F.2d at 1185.

The district court declined to consider defendants' fair-use

argument, stating that it was raised for the first time in

defendants' post-hearing brief.  See Sugar Busters, 48 U.S.P.Q.2d

at 1517.  Fair use is an affirmative defense that is usually

waived if not affirmatively pled under Federal Rule of Civil

Procedure 8(c).  See Car-Freshner Corp. v. S.C. Johnson & Son,

Inc., 70 F.3d 267, 268 (2d Cir. 1995); Dakota Indus., Inc. v.

Ever Best Ltd., 28 F.3d 910, 912-13 (8th Cir. 1994).  We have

recognized, however, that if "a defendant raises [an] issue at a

'pragmatically sufficient time,' and if the plaintiff is not

prejudiced in its ability to respond, there is no waiver of the

defense."  Simon v. United States, 891 F.2d 1154, 1157 (5th Cir.

1990) (quoting Lucas v. United States, 807 F.2d 414, 418 (5th

Cir. 1986)); see Allied Chem. Corp. v. Mackay, 695 F.2d 854, 855-

56 (5th Cir. 1983) ("Where the matter is raised in the trial

25

court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal."). We find no such waiver here. Defendants pled fair use as an affirmative defense in their answer to plaintiff's complaint, presented relevant evidence at the preliminary injunction hearing, and argued the issue in their post-hearing brief. Furthermore, plaintiff filed a rebuttal brief in September 1998, addressing explicitly the fair-use argument and claiming that the defense was "refuted in plaintiff's original brief." We therefore remand defendants' fair-use argument to the district court so that it may properly consider this potential defense to plaintiff's unfair competition claims.

E. Equitable Considerations

Defendants' final argument is that plaintiff is not entitled to a preliminary injunction under principles of equity. See 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent . . . a violation under section 1125(a) of this title."). Defendants assert that plaintiff engaged in inequitable conduct because Steward breached an agreement with Ellen Brennan to co-author a cookbook, Steward invited Ellen Brennan to "snuggle up" to plaintiff's book, plaintiff terminated Ellen Brennan's employment

26

after she retained counsel, and plaintiff refused to abide by a purported settlement of the claims at issue in this case.

The district court found that defendants' asserted "equitable considerations based on the arguments of 'inequitable behavior' and 'improper purpose' are inadequate to present a defense based on equitable relief." Sugar Busters, 48 U.S.P.Q.2d at 1517. The court apparently relied on the omission of these terms from the statement in 15 U.S.C. § 1069 that "[i]n all inter parties proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied." See id. We do not agree with the district court's assessment that the equitable considerations relevant to a preliminary injunction of unfair competition are so limited as to exclude consideration of inequitable conduct or purpose. See Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1313 (9th Cir. 1997) ("'Unclean hands is a defense to a Lanham Act infringement suit.' . . . In its claim for equitable relief, 'the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims.'") (quoting Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987)) (citations omitted); RESTATEMENT § 32 & cmt. a ("The doctrine of unclean hands is applicable in actions for the infringement of registered trademarks . . . and in actions involving unregistered marks under § 43(a) of the [Lanham Act] and at common law."); 5 MCCARTHY §§ 31:44-:58. Without

expressing any opinion as to the merit of defendants' arguments that plaintiff has engaged in inequitable conduct and that such conduct is sufficient to preclude an equitable remedy, we remand this issue so that the district court may properly consider this potential defense.

## III. CONCLUSION

For the foregoing reasons, we VACATE the preliminary injunction and REMAND to the district court for further proceedings consistent with this opinion.